## UNITED STATES TRUST CO. OF NEW YORK *v.* O'BRIEN.

*(Superior Court of New York City, General Term.* May 2, 1892.)

1. **LANDLORD AND TENANT—BREACH OF COVENANT—DAMAGES**
   In an action by a landlord against his tenant for a breach of a covenant in a lease, whereby plaintiff was to be allowed to exhibit the premises, or affix the bill "To Let" thereto, in which there was no evidence that plaintiff's failure to lease the premises was caused by the breach in question, judgment for plaintiff awarding him rent for the time the premises remained vacant as damages must be reversed, since, the action being on contract and not for tort, the jury could give damages for actual loss only, and not for possible loss.

2. **SAME—INJUNCTION.**
   In such case plaintiff had an appropriate remedy by injunction to restrain defendant from interfering with him in exhibiting the premises and affixing the bill thereto.

Appeal from jury term.

Action by the United States Trust Company of New York, trustee, etc., against Miles M. O'Brien, to recover damages for a breach of the following covenant contained in the lease of the premises: "That the defendant will, at any reasonable hour in the daytime, permit the lessor or his agent to show the premises to such persons as he desires, for the purpose of selling or leasing the same, and will permit the usual notice of 'To Let' to be posted on the premises, there to remain without molestation." The demise was for three years, commencing May 1, 1886, and ending May 1, 1889. In November, 1888, the defendant vacated the premises; and in the following February he sublet them from March 1 till May 1, 1889, to a Mrs. Worms, who refused to permit the plaintiff to exhibit the premises, or put up the bill of "To Let" provided for by the covenant. Mrs. Worms moved away on May 1, 1889, and the premises remained vacant for about five months. They were worth about $75 per month, and the jury awarded the plaintiff $375 damages, being the rent for the time the premises were vacant. There was no evidence that the plaintiff could have rented the premises, except that to be inferred from the fact that the defendant's lessee, Mrs. Worms, refused to show the premises to a person taken there to inspect them, and said she would not permit any

person to examine them, and by her refusal to permit the bill of "To Let" to remain on the premises.   From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals.   Reversed.

Argued before SEDGWICK, C. J., and FREEDMAN and MCADAM, JJ.

*Durnin & Hendrick,* for appellant.   *Stewart & Sheldon* and *S. H. Benton,* for respondent.

MCADAM, J.   Liability for breach of covenant is less extensive than that for a tort, and involves only such consequences as are the direct and proximate result of the act complained of.   There are certain arbitrary rules in regard to such breaches, the principal of which is to give compensation for what is actually lost, to make the damages correspond with the real injury sustained, but not to permit a recovery where the loss cannot be directly traced to the act done or omitted.   It will be sufficient if the injury is a natural or necessary consequence of the act, but remote or merely possible consequences are excluded from consideration.   There are many cases of loss for which the law affords no adequate remedy; hence has arisen the system of preventive justice administered in the courts of equity, by means of injunction to restrain breaches of covenant.   Covenants not to sublet or assign have not generally raised any question of damage, but one of forfeiture, (3 Suth. Dam. 143,) owing to the difficulty in establishing any legal measure of compensation for the breach.   The question involved here is much like that suggested.   There is no reasonable certainty that the plaintiff would have let the house if the covenant said to have been violated had been literally performed.   Sometimes the condition of the inside of a house is more uninviting than the outside, and an inside examination (if one had been afforded) might have repulsed the applicant for the house at once.   There was therefore no solid, substantial basis on which the jury could find, as matter of fact, that the refusal to perform the covenant was the sole cause of keeping the plaintiff's house idle for five months, and that the plaintiff, as a consequence, lost so many months' rent.   The result arrived at was necessarily speculative and conjectural.   If the action had been founded on tort, instead of upon contract, a more liberal field for the exercise of discretion would have been afforded to the jury, but they were limited in this case to the awarding of compensation for the actual, not the possible, loss; and there is no way of determining, from any of the evidence adduced, that the sum awarded was necessary to compensate the real injury done, or that the acts of the undertenant were the proximate cause of so much damage.   It is owing to the impossibility to arrive at a legal measure of damages with any sufficient degree of certainty that courts of equity entertain jurisdiction in such cases, (Pom. Eq. Jur. § 1403,) and by writ of injunction, in the nature of specific performance, enforce the terms of the covenant.   This could have been done here by enjoining the defendant and his tenant from preventing the plaintiff putting up the bill of "To Let," or from interfering with it after it was put up, or from exercising its right of showing the premises during some reasonable hour of the day, to be determined by the court, and best calculated to serve the object of the covenant and the convenience of all concerned.   The court gives specific performance instead of damages when it can by that means do more perfect and complete justice, and the covenant sought to be compensated by damages could have been more effectually enforced at the time, with perfect and complete justice in equity, than it can now by the uncertain character of proof available in an action at law for compensatory damages.   A man who enters into an agreement is bound in equity to a true and literal performance of it.   He cannot be suffered to depart from it at pleasure, leaving the other party to his remedy for damages by law.   Kerr, Inj. p. 534.   It is no answer to say that the act complained of will inflict no injury on the plaintiff, or will be even beneficial to him.   It is for the plaintiff to judge whether the agreement shall be preserved,

as far as he is concerned, or whether he will permit it to be violated. Id. p. 533. There is no wrong without a remedy, which means its appropriate remedy, and, where that is to be found in equity, it should be sought for there, or the plaintiff may be referred to *injuria absque damno*, or some other maxim which may defeat his recovery at law. There was nothing in the proofs presented to warrant the damages allowed to the plaintiff, and for this reason the judgment and order appealed from must be reversed, and a new trial awarded, with costs to the appellant to abide the event. All concur.