## ANNA M. CARLSON

### *v.*

## WILHELMINA KOERNER.

*Opinion filed February 21, 1907.*

1. INJUNCTION—*power of court of equity to enforce negative covenant.* A court of equity has jurisdiction to interfere by injunction and indirectly enforce an express negative covenant contained in a contract or lease by prohibiting its breach, even though the breach will occasion no substantial injury or though the damages for the injury may be recoverable at law.

2. SAME—*negative covenant must be express and not implied.* To justify a court of equity in enjoining the breach of a negative covenant without proof of substantial injury it is essential that the negative covenant be express and certain, and not merely implied from some positive stipulation of the parties.

3. SAME—*what is not an express negative covenant.* Provisions of a lease requiring the lessee to work out the road tax and do twenty-five acres of fall plowing, to allow the lessor to haul out manure and do fall plowing, and reserving to the lessor the privilege of plowing stubble ground after the lessee has removed the grain, with the right to enter for viewing, seeding, repairing, or any other purpose, do not amount to an express negative covenant that the

lessee shall refrain from interfering with the lessor's entry upon the premises to plow stubble, and a court of equity cannot enjoin such interference without proof of irreparable injury.

4. SAME—*circumstances under which injury will be irreparable.* An injury may be irreparable either from its own nature, as where the party injured cannot be adequately compensated therefor in damages, or when the damages cannot be measured by any pecuniary standard, or where it is shown that the party who must respond in damages is insolvent.

5. SAME—*mere allegation of irreparable injury, without proof, is not sufficient.* A mere allegation of irreparable injury, in a bill for injunction, while it may be sufficient to give a court of equity jurisdiction on the face of the bill, is not sufficient upon the final hearing unless sustained by the proof.

6. SAME—*what is not irreparable injury.* Damages sustained by a lessor from the lessee's refusal to allow him to do fall plowing are uncertain and speculative and do not sustain an allegation of irreparable injury, since such damages may be approximated in an action at law as well as in equity, and the mere fact that they are speculative does not invest a court of equity with jurisdiction.

7. SAME—*when proof of insolvency of lessee is not sufficient.* Where there is a surety on a lease, the insolvency of the lessee does not invest a court of equity with jurisdiction of a bill to enjoin the lessee from interfering with the entry of the lessor to do fall plowing, unless it is further shown that the surety is also insolvent.

8. SAME—*equity has no jurisdiction if complainant has an adequate remedy at law.* Where a lease expressly provides that if the lessee fails to keep the covenants the lessor shall have the right to declare the lease void and re-take possession of the premises, and that the lessee shall pay all costs, attorney's fees and expenses arising from the enforcement of the covenants, an action of forcible detainer, and not a bill for injunction, is the proper remedy where the lessee breaks her covenant to allow the lessor to do fall plowing.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

On April 21, 1902, appellee, Wilhelmina Koerner, leased to one John Carlson, husband of appellant, about 170 acres of land in Will county for a term of five years from March 1, 1903, at a rental of $658.75 per year, payable November 1

and February 1 of each year. Carlson took possession March 1, 1903, and continued in possession until August 14, 1904, when he died, leaving his wife, the appellant, and eight children surviving him. On September 19 of that year appellee re-leased the premises to the widow from March 1, 1905, until March 1, 1906, at the same rental, the lease, however, providing that the tenant should haul out the manure, leave twenty-five acres of fall plowing at the expiration of the lease, allow appellee to do fall plowing on the premises, and reserving to the appellee the privilege of plowing the stubble ground after the tenant had secured the grain therefrom, together with a right of entry for viewing, seeding, making repairs, and for any other purpose. Appellant entered into possession under the last named lease, and in the fall of 1905, after she had secured the grain grown upon the premises, appellee went to the premises for the purpose of plowing the stubble ground, but appellant refused to allow her to do so, locked the gates against her, and placed notices thereon forbidding her to enter. Appellee then filed this bill in the circuit court of Will county, alleging that the defendant was in possession of the farm subject to her rights under said lease, and praying for an injunction to restrain defendant from interfering with her going upon the premises, etc., as provided in the lease, alleging that if she was prevented from doing so it would cause her an irreparable injury, and also setting up the insolvency of the defendant.

Appellant answered the bill, denying that the complainant was in possession September 19, 1904, as alleged, but that she, the defendant, was rightfully in the exclusive possession of the same on that date as the personal representative of her husband, John Carlson, under the lease of April 21, 1902, and that she had a homestead interest in the premises; that a few days after the death of her husband, complainant came to her and stated that the lease to John Carlson was not good, threatening to put her off the premises unless she executed a new lease, and as a result of such threats and

226—2

statements she signed the lease of September 19, 1904; also expressly denying that she, the defendant, was insolvent.

Upon the hearing of a motion for a temporary injunction upon affidavits filed, the court found that it was not advised under which lease appellant held, but ordered that she might plow the stubble ground remaining unplowed within ten days from the date of the order at her own risk and without prejudice to the rights of the complainant, and in case the defendant failed or neglected to plow the ground within the time specified, then complainant might plow the same at her own risk and without prejudice to the rights of the defendant, the court retaining jurisdiction to determine the rights of the parties upon a full hearing.

Upon the final hearing, on bill, answer and replication, the court found the issues in favor of the complainant, holding that the lease from her to John Carlson, dated April 21, 1902, had been terminated by the parties, and the defendant held the premises under the lease of September 19, 1904, and entered an order restraining her from preventing complainant from going upon the premises, as prayed by the bill, and awarded costs against the defendant. To reverse that decree an appeal was prosecuted to the Appellate Court for the Second District, but the same was affirmed, and this further appeal has been prosecuted.

F. M. FAHEY, for appellant:

General allegations of irreparable injury in a bill are not sufficient. *Porter* v. *Desplaines*, 123 Ill. 111.

To entitle a person to injunctive relief he must establish, as against the defendant, an actual and substantial injury. 16 Am. & Eng. Ency. of Law, (2d ed.) 360.

An injunction should not be granted except in a clear case of irreparable injury and with full conviction on the part of the court of its urgent necessity. *Cleveland* v. *Martin*, 218 Ill. 90; *Lloyd* v. *Coal Co.* 210 id. 460; *Howell Co.* v. *Glucose Co.* 171 id. 350.

COWING & YOUNG, for appellee:

An injunction will lie to prevent waste, nuisance, interference with an easement, violation of negative conditions in contracts, etc., where the injury is irreparable. High. on Injunctions, (3d ed.) secs. 649, 697, 739, 848.

It is also frequently invoked as between landlord and tenant, for the better protection of their rights in the demised premises. *Stafford* v. *Swift,* 121 Ill. App. 508; High on Injunctions, (3d ed.) secs. 430, 436.

So where a farm is leased, reserving to the landlord the right of hunting and taking game upon the premises, an unauthorized interference with such right by the lessee may be enjoined. 2 High on Injunctions, (3d ed.) sec. 1143.

The jurisdiction of equity is to be determined by the facts existing when the suit is commenced. If plaintiff is then entitled to the aid of equity, the jurisdiction will not be defeated by subsequent events which render equitable relief unnecessary or improper. 16 Cyc. 113; *Martin* v. *Jameson,* 39 Ill. App. 248.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is insisted by counsel for appellee that the covenant in the lease is a negative covenant and a court of equity will restrain its violation by injunction, even though no irreparable injury is shown. It is no doubt the rule that in respect to purely negative covenants annexed to or contained in contracts or leases, courts of equity frequently interfere by injunction and indirectly enforce specific performance of such negative covenants by prohibiting their breach; and it is equally well settled that where there is such an express negative covenant, courts of equity will entertain jurisdiction by injunction although the same will occasion no substantial injury, or even though the injury, if any, be recoverable at law. This is upon the principle that the owner of land selling or leasing it may insert in his deed or contract just such

conditions or covenants as he may see fit touching the use or enjoyment of the land, and in case of the breach thereof he is not to be defeated by the opinions of any number of persons that he is not substantially injured thereby. But in order to give courts of equity jurisdiction on that ground the covenant must be a negative one and must be certain, and the use of the premises for a specific purpose must be clearly fixed by the agreement of the parties. If the negative covenant is only implied from a positive stipulation, courts are not so ready to lend their jurisdiction. (High on Injunctions, secs. 714-722; *Consolidated Coal Co.* v. *Schmisseur,* 135 Ill. 378; *Star Brewery Co.* v. *Primas,* 163 id. 652; *Postal Telegraph Co.* v. *Western Union Telegraph Co.* 155 id. 335.) The lease in question falls far short of coming within the rule announced in the authorities above cited. Its terms are as follows: "Party of the second part (appellant) to work out road tax and allow first party (appellee) to fall plow and haul out manure, second party to haul out manure and have twenty-five acres fall plowed at expiration of lease; * * * and first party reserves the privilege of plowing stubble ground after second party has secured grain, and right to enter for viewing, seeding, repairing or any other purpose." The terms used are positive and affirmative, not only as to the rights of the appellee, but also as to those of the appellant. Each of them is to do certain affirmative acts named and there is no express covenant that either will refrain from doing any particular thing. There is no covenant or agreement that appellant will not interfere with appellee in her efforts either to plow the land or haul out the manure. The position of appellee must be, that inasmuch as appellant covenanted to allow her to enter for certain purposes there is an implied negative covenant not to interfere with her doing so. The terms here used are not negative and can only become so by implication, and if they can be so treated, many affirmative or positive covenants may be construed to be negative and a court of equity given jurisdiction to en-

force covenants either affirmative or negative. There is no negative covenant within the rule laid down by the authorities, and hence equity had no jurisdiction without proof of irreparable injury.

Can the bill be maintained upon the ground that appellee will be irreparably injured by reason of the failure to have the land plowed in the fall? She alleged in her bill that appellant was insolvent and her loss would be irreparable unless equity intervened. An injury may be irreparable either from its own nature, as where a party injured cannot be adequately compensated therefor in damages, or when the damages which may result therefrom cannot be measured by any pecuniary standard, or when it is shown that the party who must respond is insolvent and for that reason incapable of paying damages. (16 Am. & Eng. Ency. of Law,—2d ed. —361.) The mere allegation of irreparable injury, while it may be sufficient to give a court of equity jurisdiction upon the face of the bill, is not sufficient upon the final hearing unless sustained by proof. The evidence in this record is not, in our opinion, sufficient for that purpose. The damages caused by being prevented from plowing in the fall instead of the spring are, at most, uncertain or speculative, and, in fact, may not exist at all. They depend on many different elements, as shown by the evidence. The next year's crop may be equally as good though the ground was plowed in the spring instead of in the fall. The season may be either too wet or too dry to produce any crop at all, or some other unforeseen condition may arise to prevent the growing of a crop no matter when the ground was plowed. These facts are well known and render uncertain any damages that may be sustained, much less to show irreparable damages. To show that damages are merely speculative is not sufficient to give a court of equity jurisdiction. They may be approximated in an action at law as well as in chancery. While this bill alleged that appellant was insolvent, that allegation was denied in the answer, and the evidence failed to prove it. On

the contrary, there was proof that appellant had some property, though just how much does not appear. Even if she was insolvent there was a surety on the lease, and in order to give a court of equity jurisdiction on the ground of insolvency it would have been necessary to show not only that the appellant herself was insolvent, but also that the surety was insolvent.

We think the court was without jurisdiction for the reason that appellee had a complete and adequate remedy at law. The lease expressly provided that if appellant failed to keep the covenants or should underlet the premises the appellee should have the right to declare the lease null and void and re-take possession, appellant to pay all costs, attorney's fees and expenses arising from enforcing the covenants of the lease. If appellant refused to allow appellee to enter for the purpose of doing what the lease expressly provided she might do, appellant violated the terms of the lease, and appellee had her election to bring an action of forcible entry and detainer and thereby secure possession of the premises. This remedy, if applied, would have been summary, and could have been speedily enforced so as to have given appellee immediate possession, thus enabling her to do the fall plowing if she wished and avoiding any damage which might be occasioned by reason of appellant's violation of the contract. It cannot be successfully contended that if there was an adequate remedy at law resort could be had to a court of equity.

We are not impressed with the justice and equity of the appellee's cause, as shown by this record. She had no sufficient cause for bringing appellant into a court of chancery and subjecting her to the heavy expense of litigation there.

The judgment will be reversed and the cause remanded, with instructions to the trial court to dismiss the bill for want of equity.                    *Reversed and remanded.*