Anheuser-Busch Brewing Association, Appellee, v. William G. Dwyer et al., Appellants.

Gen. No. 15,337.

1. INJUNCTIONS—*enforcement of negative covenants.* Equity will restrain the violation of negative covenants contained in a contract or lease even though no substantial injury may result from such violation, and even though, further, the damages sustained might be recovered at law.

2. INJUNCTIONS—*enforcement of negative covenants.* An in-

316 APPELLATE COURTS OF ILLINOIS.

Anheuser-Busch Brewing Association v. Dwyer. 150 Ill. App. 315.

junction lies to restrain the purchase of beer from any other than the complainant if the defendant by contract and lease has negatively covenanted not to so purchase.

HOLDOM, P. J., dissenting.

Bill for injunction. Appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed October 7, 1909.

**Statement by the Court.** This is an appeal from an interlocutory order of the Superior Court granting an injunction, upon the face of a bill filed on behalf of the appellee.

The bill avers that the complainant is engaged in the manufacture and sale of domestic beer, and was so engaged February 25, 1907, at which time the appellants were and still are engaged in the sale of domestic beer at retail under the name of W. G. Dwyer & Company, in the store floor and basement of the building known as 191 East Lake street and 36 Fifth avenue, Chicago; that complainant and Hannah & Hogg, a corporation which is made co-defendant, acquired a lease of said premises from one James W. Sheridan; that at the time it was so acquired the said Hannah & Hogg was and still is engaged in the sale of liquors and cigars at wholesale in Chicago, and that at the time said lease was so acquired from said Sheridan it was agreed between appellee and said Hannah & Hogg that the lease should be taken in the name of said Hannah & Hogg, but for the benefit of both Hannah & Hogg and the complainant, appellee herein, and that the premises should be sublet or relet, but only for use as a buffet and saloon in which only beer manufactured by appellee and wines and liquors sold by Hannah & Hogg should be used and sold thereon during the term of the lease; that in consideration that only domestic beer of appellee should be sold on said premises during the entire term of said lease, appellee guaranteed in writing to Hannah & Hogg the payment of one-half the rent for said premises during the

entire term of said lease, appellee making said arrangement in order that complainant might thereby secure an outlet for sale of domestic beer manufactured by it; that the lease from said Sheridan was taken in the name of said Hannah & Hogg for a period of ten years ending April 30, 1914; that in August 1903 Hannah & Hogg at appellee's instance executed a lease of said premises to David Lewinsohn Company for a term commencing May 14, 1904, and ending April 30, 1914. This lease contained the following clause:

"It is further expressly covenanted and agreed by and between the parties hereto, in consideration of the within lease, that the said party of the second part shall buy all the draught beer to be used or sold in the said buffet or saloon aforesaid from and of the Anheuser-Busch Brewing Association of St. Louis, Missouri, which is in the business of manufacturing and selling beer; that said party of the second part shall not, directly or indirectly, buy, take, or sell any draught beer whatsoever manufactured or sold by any other brewery than that belonging to said Anheuser-Busch Brewing Association of St. Louis, Missouri. Any violation of the covenants in this paragraph shall at once work a forfeiture by said second party of this lease; and said demised premises shall thereupon immediately revert to said party of the first part with all the rights to said party of the first part of re-entry and possession as herein provided in case of forfeiture."

The bill alleges that on March 1, 1905, this lease with the consent of appellee and of Hannah & Hogg was assigned by the lessee, Lewinsohn & Company, who had complied with its covenants, to one Elizabeth C. Rehm; that at the same time appellee loaned to said Rehm $10,000 to enable her to purchase said leasehold, said loan being evidenced by thirty-four notes made by her, dated February 28, 1905, due respectively from one to thirty-six months after their date, the first note being for $200 and the last for $3,400, all of said notes being secured by chattel mortgage

318 APPELLATE COURTS OF ILLINOIS.

Anheuser-Busch Brewing Association v. Dwyer. 150 Ill. App. 315.

given by said Rehm to appellee covering all the fixtures and personal property in said premises; that contemporaneously with said loan, appellee and said Elizabeth C. Rehm entered into a written agreement which, after reciting the making of said loan and the execution of said notes securing the loan and that one of the inducements for making the loan was the making of the said written agreement, contains the following clause:

"This Agreement Witnesseth: That the said Elizabeth C. Rehm, for and in consideration of the premises and of one dollar to her in hand paid, the receipt whereof is hereby acknowledged, has promised and agreed and does hereby promise and agree to and with the said Anheuser-Busch Brewing Association that during the term of nine and one-half years next after the date hereof she will carry on and conduct a saloon business on the premises described in said chattel mortgage, to-wit, the southwest corner of Lake street and Fifth avenue, known as No. 36 Fifth avenue, in the city of Chicago in the state of Illinois; that during said term of nine and one-half years she will purchase of said Anheuser-Busch Brewing Association, for sale and use upon said premises beer manufactured by said Association of a grade not inferior to that known to the trade as 'Budweiser'; and that during such term she will not suffer or permit any domestic beer other than that manufactured by said Association to be used on said premises; and that she will pay for all beer so purchased in cash upon delivery the current market price of said Association for its said beer of that quality in Chicago.

"And the said Anheuser-Busch Brewing Association, in consideration of the premises, promises and agrees that during the same term it will sell to said Elizabeth Rehm all the domestic beer needed or required by her in her said business on said premises at its current market price for the same in Chicago at the time of delivery as aforesaid."

Said agreement was executed by said Elizabeth C. Rehm and by appellee.

The bill states that said Rehm conducted thereafter

in said premises a buffet and saloon until February 25, 1907, complying with the express covenant contained in said lease and agreement.

It is further set forth that on the 25th day of February, 1907, the appellants herein, with appellee's consent, purchased from said Elizabeth C. Rehm the entire interest of said Rehm in and to the said leasehold, buffet and saloon theretofore conducted by said Rehm, and said Rehm assigned and transferred to appellants all her right, title and interest in and to said lease; that appellants accepted said assignment and agreed to make all payments and perform all covenants and conditions in said lease mentioned to be performed by the party of the second part, and expressly agreed to perform the covenant and condition in said lease as respects the sale and use on said premises of the beer manufactured by complainant and to perform the agreement respecting the sale of wines and liquors of the co-defendant, Hannah & Hogg, and expressly accepted the contract between appellee and said Rehm dated February 28, 1905, by writing at the end of said contract, "We hereby accept the above contract. T. J. Burns, W. G. Dwyer, February 25, 1907;" that said appellants assumed and agreed to pay the portion of the indebtedness remaining unpaid and owing by the said Rehm to appellee and procured from said Rehm a bill of sale of the buffet and saloon and other property subject to the said chattel mortgage, and agreed with appellee, by acceptance of said contract in writing, that they would during the remainder of the term of said lease conduct a saloon and buffet upon the said premises and purchase from appellee for use thereon domestic beer manufactured by appellee, and the latter by the acceptance of said agreement agreed that it would sell to appellants all the domestic beer needed or required by the latter in their business upon said premises at complainant's market price for said beer in Chicago at the time of delivery of the same; that afterwards appellants entered into possession of said premises and conducted

320 APPELLATE COURTS OF ILLINOIS.

Anheuser-Busch Brewing Association v. Dwyer, 150 Ill. App. 315.

a buffet and saloon and evidenced their acceptance of said assignment of lease and contract by purchasing domestic beer for use and sale on said premises which was manufactured by complainant; that by various payments appellants reduced the amount due appellee on said chattel mortgages from $5,800, due when appellants took over the business from said Rehm, to $3,400 due February 20, 1908; that on said last mentioned date appellants paid one of said notes for $200 and for the remainder due appellee executed sixteen notes each for $200 and also a chattel mortgage covering the property and fixtures in said premises to secure said notes, and have since paid certain of said last mentioned notes; that until September 1, 1908, all domestic beer sold or used on said premises was bought from appellee, and that appellee during said time fully performed its obligations under said contract and sold and delivered to appellants all the domestic beer needed or required by them in their business on said premises at the current market price until on or about September 1, 1908, when appellants refused to receive the domestic beer ·manufactured and sold by appellee and stated they would no longer receive any of said beer for use and sale on said premises, but would use and sell upon said premises the domestic beer made and sold by other brewing companies; that on various dates since September 1, 1908, appellee has tendered and offered to deliver to appellants all domestic beer required by them for use and sale on said premises and appellants have refused the tender and stated they would not receive any domestic beer manufactured and sold by appellee.

That on September 1, 1908, appellants informed appellee that they had been offered a large inducement by the Seipp Brewing Company to discontinue the sale upon said premises of beer manufactured by complainant and to sell and use upon said premises only the beer manufactured by said Seipp Brewing Company; that the amount offered was stated to be approximately $3,000, and appellants informed appellee

that the inducement was so great that they intended to and would accept said offer; that on September 25, 1908, appellee caused to be delivered to said appellants a written demand that said appellants comply with the terms of said lease and contract; that said appellants did not recognize said demand and refused to receive any domestic beer of complainant for use and sale on said premises or to carry out said contract as respects the sale of beer, and this without just cause.

Appellee charges that to enable them to terminate their contractual relations with appellee under the said lease and agreement and to enter into an agreement with the Seipp Brewing Company to be supplied with all domestic beer required by them and to safeguard themselves from attack by Hannah & Hogg, appellants entered into a tacit agreement and understanding with said Hannah & Hogg that the latter as nominal lessor in said lease would in no case proceed to enforce the negative covenant of said lease in favor of appellee, and as a further inducement to said Hannah & Hogg to refrain from adverse proceedings against them, appellants have continuously since September 1, 1908, used and sold in and about the premises in said lease described wines and liquors purchased exclusively of said Hannah & Hogg at the current market prices in conformity with the provisions of the lease of February 28, 1907; that prior to the filing of this bill and on November 9, 1908, appellee made a formal demand in writing on said Hannah & Hogg to take appropriate steps to institute an action in the nature of a bill of complaint in equity to protect appellee's rights and interests and enforce the duties and obligations of said appellants and enjoin their wrongful acts and offered to pay Hannah & Hogg all expenses of such proceedings, including solicitor's fees, and to indemnify and save harmless the said Hannah & Hogg from any loss or damage by reason of said proceeding; that appellee further requested Hannah & Hogg in case the latter refused to institute

322     APPELLATE COURTS OF ILLINOIS.

Anheuser-Busch Brewing Association v. Dwyer, 150 Ill. App. 315.

such proceedings to give appellee permission to do so in the name and on behalf of said Hannah & Hogg, offering to pay all expenses of said proceedings and to indemnify and save harmless said Hannah & Hogg from any loss or damage by reason of such use of the name of the latter or of such proceedings; but Hannah & Hogg refused to institute such proceedings or to permit appellee to do so in the name of said Hannah & Hogg, and appellee has therefore been unable to join Hannah & Hogg as complainant herein and has made it co-defendant.

The bill contains other averments which it is not necessary to set forth at length for the purposes of this appeal, and prays *inter alia* that appellants be decreed not to sell or permit to be sold upon the premises described any domestic beer other than that manufactured by complainant as long as they occupy said premises and up to and including April 30, 1914; that they be restrained from either directly or indirectly selling or permitting to be sold upon said premises any domestic beer other than that manufactured by appellee, and from in any wise either directly or indirectly violating said negative covenant in said lease and in the contract contained, and that an injunction to that effect be issued *pendente lite;* that as respects all the defendants, appellee be decreed to have a bene ficial interest in the leasehold and that the rights of appellee under said lease be fixed and determined by the court and for other relief.

Upon hearing before the chancellor an injunction as prayed was issued on the face of the bill, and from the order to that effect this appeal is prosecuted.

WALTER H. JACOBS, for appellants.

MOSES, ROSENTHAL & KENNEDY, for appellee; JOSEPH W. MOSES, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is sought to set aside the injunction order en-

tered in this case upon the ground, first, that it restrains the breach of a contract, is a negative specific enforcement of the contract and should therefore be governed by the same doctrine and rules which control in cases of specific performance. On the other hand, appellee's counsel urge that the bill at bar was filed not with a view of compelling a direct specific performance of the affirmative covenants of the lease and contract by way of injunction, but by means of that remedy to enforce and prevent a violation of the express negative covenants of those instruments. The injunction order complained of restrains appellants from permitting "any domestic beer other than that manufactured by the Anheuser-Busch Brewing Association" to be used upon the premises in question, and "from directly or indirectly buying, taking or selling on said premises any draught beer whatsoever manufactured or sold by any other brewing company than the complainant." This is not in our opinion a mere indirect attempt to enforce the specific performance of the affirmative covenants of the lease and contract. Appellants are not compelled under this injunction to "carry on and conduct a saloon business on the premises described in said chattel mortgage," nor to "purchase of said Anheuser-Busch Brewing Association for sale and use upon said premises beer manufactured by said Association." They are not required to specifically perform any of these agreements; they are by the language of the injunction merely restrained from selling or using any other beer save appellee's on the said premises. It is conceded by appellants' counsel that Illinois cases hold "that equity will enjoin the breach of negative covenants in contracts and deeds and in such proceedings is not governed by the ordinary rules in cases for specific performance." The injunction in this case does not forbid appellants closing their saloon on these premises and going elsewhere if they see fit, nor forbid their ceasing to use or sell domestic beer on the premises. Neither does it require appellants to buy any draught

324    APPELLATE COURTS OF ILLINOIS.

Anheuser-Busch Brewing Association v. Dwyer, 150 Ill. App. 315.

or domestic beer from appellee. It merely forbids them from buying such beer for use or sale on the premises from any one else than appellee until the further order of the court.

In Carlson v. Koerner, 226 Ill. 15, 19, cited by appellants' counsel, it is said: "It is no doubt the rule that in respect to purely negative covenants annexed to or contained in contracts or leases, courts of equity frequently interfere by injunction and indirectly enforce specific performance of such negative covenants by prohibiting their breach; and it is equally well settled that where there is such an express negative covenant, courts of equity will entertain jurisdiction by injunction, although the same will occasion no substantial injury, or even though the injury, if any, be recoverable at law. This is upon the principle that the owner of land selling or leasing it may insert in his deed or contract just such conditions or covenants as he may see fit touching the use or enjoyment of the land, and in case of the breach thereof he is not to be defeated by the opinions of any number of persons that he is not substantially injured thereby." See also Star Brewery Co. v. Primas, 163 Ill. 652, 658, where it is said that "the owner of land selling or leasing it may insist upon just such covenants as he pleases touching the use and mode of enjoyment of the land," and the breach of such negative covenant may be enjoined.

In the case at bar the lease and the contract each contains a condition or covenant "touching the use or enjoyment of the leased premises, which in effect is that the premises shall not be employed for the use or sale of any draught beer whatsoever manufactured or sold by any other brewery than that of the appellee. This restriction by the terms of the lease is made binding upon and to apply and inure to the "respective successors and assigns" of the parties to the lease. We deem it unnecessary, in view of previous decisions, to discuss at length the question as to whether an injunction will lie to prevent viola-

tion of express negative covenants or agreements of
a lease or contract. The question was presented in
Garden City Sand Co. v. The Southern Fire Brick
Company, 124 Ill. App. 599, 607, and the judgment of
the Appellate Court was affirmed by the Supreme
court in a comprehensive opinion. Southern Fire
Brick Co. v. Sand Company, 223 Ill. 616, 624. It is
said by appellants' counsel that in the case at bar the
negative agreement set out in the lease does not pur-
port to restrict the use to which the premises shall
be put and cannot be brought under the head of a
covenant restricting the use of the demised premises.
In Carlson v. Koerner, 226 Ill. 15, 19, it is held in
substance that where there is an express negative
covenant annexed to or contained in contracts or
leases, courts of equity will entertain jurisdiction by
injunction, although the same will occasion no sub-
stantial injury or even though the injury, if any, be
recoverable at law. But in order to give courts of
equity jurisdiction on that ground the covenant must
be a negative one and must be certain and the use of
the premises for a specific purpose must be clearly
fixed by the agreement of the parties. "If the nega-
tive covenant is only implied from a positive stipula-
tion, courts are not so ready to lend their jurisdic-
tion." It is evident we think that by the restrictive
clauses in the lease, as well as the more explicit phrase-
ology of the contract, it is "expressly covenanted and
agreed" that the lessee "shall buy all draught beer
to be used or sold" on the demised premises from
appellee and "shall not directly or indirectly buy, take
or sell any draught beer whatsoever manufactured or
sold by any other brewery," and that such covenant
and agreement come within "the principle that the
owner of land selling or leasing it may insert in his
deed or contract just such conditions or covenants as
he may see fit touching the use or enjoyment of the
land." Carlson v. Koerner, *supra*, pp. 19, 20. Whether
in actual terms or express restriction upon the use of
the premises, the language used in the lease does, we

think, in substance restrict the lessee to "the use of the demised premises in a particular manner or for a specified purpose"; and in such case "a violation of the covenant by the use of the premises in a different manner or for another purpose forms ground for the interposition of equity by injunction, and in all such cases a court of equity is. regarded as the appropriate forum for administering relief." High on Injunctions (4th ed.), vol. 1, sec. 436. See also Pomeroy's Equitable Remedies, vol. 1, sec. 285. Restrictive covenants in deeds and leases relating to the use of demised premises are enforced, as is conceded by appellants' counsel, "without regard to questions of irreparable injury, the financial responsibility of the parties or mutuality of remedy or obligation." The contention is that the negative agreement in question "does not purport to restrict the use to which the premises demised shall be put." Whether, or not, as above stated, we regard it as an express restriction in exact terms upon the use of the premises, it is clear that such is its purport and that it was intended to restrict the lessee from the use and sale of any beer on the demised premises other than that made and sold by appellee. It is subject to no other construction. And such restrictive covenants in leases "will be specifically enforced in equity by means of injunction not only between the immediate parties, but also against subsequent purchasers with notice, even when the covenants are not of a kind which technically run with the land." Pomeroy's Equity Jurisprudence, vol. 4, sec. 1342 (3rd ed.).

It is urged that appellee has a plain, adequate and complete remedy at law. In addition to what is above said upon this point, the objection has been considered by the Appellate Court in Stafford v. Swift, 121 Ill. App. 508, 510, where it was said: "It is argued that appellee has a complete remedy at law in an action for damages since it does not appear that such a judgment could not be collected. But the exercise of the preventive jurisdiction of courts of equity in cases of

violation of negative or restrictive covenants annexed to leases is sustained by abundant authority, and is based 'in part upon the necessity of preventing a constantly recurring grievance resulting from the continuous breach of the covenant which cannot be adequately compensated by an action for damages.' (High on Injunctions, 3rd ed., Sec. 436). In Consolidated Coal Co. v. Schmisseur, 135 Ill. 371, 378, it is said that courts will interpose by injunction and indirectly enforce specific performance of negative covenants in contracts or leases even though their breach may occasion no substantial injury or though damages, if any, may be recoverable at law. See, also, United States Trust Co. v. O'Brien, 18 N. Y. Supp. 798-800, where it is said that such a covenant as that here in question could be more effectually enforced at the time with perfect and complete justice in equity, than afterward by the uncertain character of proof available in an action at law for compensatory damages.''

Whatever view may have been taken in some other jurisdictions, we are of opinion that the law as above stated is sustained by sound reasoning as well as by the greater weight of authority.

It is further urged that ''a contract calling for a succession of acts, whose performance cannot be consummated by one transaction and which requires protracted supervision will not be specifically enforced in equity.'' Inasmuch as the injunction under consideration merely restrains appellants from violating, not implied, but express negative covenants of the contract and lease in controversy, no question of specific performance is now involved. It may be said, however, that it is certainly equitable to dispose of the questions presented by this bill in one proceeding if the alternative would be a multiplicity of suits at law during the five years yet remaining before the expiration of the term of the lease and contract. It appears, moreover, that appellee is not by the terms of the lease made a party thereto, and it is said could not

maintain an action thereon at law for a breach of the covenants in its favor. The bill shows that appellee sought permission of the alleged nominal lessor, Hannah & Hogg, to bring suit in the name of the latter corporation for the alleged breach of the covenants of the lease and such permission was refused. We think it immaterial that, as argued by appellants, the effect of the injunction is to specifically perform the contract, that appellants must either go out of business or purchase beer of appellee; and the objection that the court must exercise continual supervision over the subject-matter is we think rather fanciful than real, but in any event furnishes no ground for disturbing the injunction complained of.

The cause has been elaborately presented by counsel, but inasmuch as the views stated seem to us controlling, we deem it unnecessary to extend the discussion. For the reasons indicated the injunction order of the Superior Court complained of will be affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE HOLDOM dissenting.