RICHARD PETRZILKA *et al.*, Plaintiffs-Appellants, v. STEVE GORSCAK, Defendant-Appellee.

Second District   No. 2—89—1114

Opinion filed June 26, 1990.

Robert D. Greenwalt, of West Chicago, for appellants.

G. William Richards, of Aurora, for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs, Richard and Nancy Petrzilka, filed a complaint in the circuit court of Kane County, seeking to enjoin the defendant, Steve Gorscak, from operating a carpet cleaning business within a 10-mile radius of the City of Aurora. The circuit court granted plaintiffs a preliminary injunction but entered final judgment in favor of defendant. Plaintiffs contend the trial court erred when it found plaintiffs failed to prove they had no adequate remedy at law and they failed to prove irreparable injury if defendant were not enjoined. Plaintiffs also contend the trial court erred when it took judicial notice of the changing boundaries of the City of Aurora which would make the proposed injunction too difficult to enforce.

On May 19, 1988, plaintiffs purchased defendant's carpet cleaning business known as "Steam-Power" for $30,000. As part of the contract for sale, defendant covenanted "to not compete in a similar business, in any capacity, including ownership of stock or any other type of ownership, or any type of employment, in a ten mile radius of the City of Aurora for a period of not less than five years." Plaintiffs also managed some apartment buildings but obtained a separate telephone line to conduct the carpet cleaning business. The actual services of the business, the cleaning of carpets, were performed by Tim Carwyle, the only employee. Plaintiffs incorporated the business as Steam-Power, Inc.

Defendant moved to Florida after he sold the business but returned in April 1989. Plaintiffs did not find the business profitable and intended to sell it to Carwyle and his partner for $20,000 in installments. Defendant assumed that he could reenter the industry and bought carpet cleaning equipment. He advertised in the Aurora newspaper and contacted Steam-Power's customers. Carwyle then added a paragraph to the contract for sale which stated that "[s]ellers warrant they will pursue a court action to stop Steve Gorschak from competing per his contract of 5-19-88."

The record also reflects the testimony of a former customer of Steam-Power who switched to defendant's business in 1989. She changed because Steam-Power's professionalism had slipped, she was being overbilled and her telephone calls were not returned. Carwyle testified that numerous customers were lost to defendant, a fact

which defendant readily acknowledged. Carwyle attempted to testify regarding the dollar amounts of the decrease in gross sales, but the trial court ruled that he had not laid a proper foundation to testify as to economic losses.

The trial court entered a directed verdict against plaintiffs on count II, in which they sought monetary damages of $10,000, which plaintiffs claimed was the drop in the value of the business resulting from defendant's competition. The court found the damages to be unsubstantiated. The court also found that plaintiffs retained a sufficient interest in Steam-Power to maintain standing to sue to enforce the 1988 contract.

Following the close of the evidence, the court found plaintiffs failed to prove that they had no adequate remedy at law and they would suffer irreparable injury. The court further stated that the boundaries of the City of Aurora were changing every day and thus the court could not enforce the contract. The court entered judgment in favor of defendant, and plaintiff appeals.

■ Plaintiffs contend that they did not need to prove irreparable harm or an inadequate remedy at law inasmuch as the trial court applied the standard for determining a preliminary injunction rather than the standards for a permanent injunction. Such a contention is not unusual because in many cases the distinction between a temporary restraining order, a preliminary injunction and a permanent injunction becomes blurred during the proceedings. (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 385.) A trial court errs when it enters a permanent injunction after a hearing on a motion for a preliminary injunction (*Lily of the Valley Spiritual Church v. Sims* (1988), 169 Ill. App. 3d 624, 629) or grants the ultimate relief sought (*Shodeen v. Chicago Title & Trust Co.* (1987), 162 Ill. App. 3d 667, 675). The purposes of the two remedies are different, and the requirements of supporting them also differ. In addition, this area of the law is further confused by the different analyses utilized in determining noncompetition clauses involving the sale of businesses and those involving employment contracts. (*O'Sullivan v. Conrad* (1976), 44 Ill. App. 3d 752, 755.) Moreover, any confusion the parties might have had regarding the proper standard is understandable because most of the cases involving noncompetition clauses have arisen from interlocutory appeals regarding preliminary injunctions.

■ The purpose of a preliminary injunction is to preserve the relative position of the parties until a trial on the merits can be held. (*Lily of the Valley Spiritual Church*, 169 Ill. App. 3d at 628.) Since it is an extraordinary remedy, the movant must show that he will suffer

irreparable harm if the status quo is not preserved. (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 501.) However, a movant need only present a likelihood of success on the merits, *i.e.*, he must raise a fair question as to his rights, rather than fully prove his rights to obtain a preliminary injunction. (*PCx Corp. v. Ross* (1988), 168 Ill. App. 3d 1047, 1055.) A preliminary injunction concerns only those damages which might arise prior to the final decision of the court. *Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1983), 120 Ill. App. 3d 830, 835.

■ While the requirements of proving a preliminary injunction are similar to the requisites for establishing a permanent injunction, they are not identical. In both instances, a movant must prove a lack of an adequate remedy at law. For the purposes of a permanent injunction, an inadequate remedy can be the threat of irreparable harm or other harm that cannot be adequately corrected by the payment of monetary damages. Irreparable harm is the most common method of proving an inadequate remedy at law and denotes transgressions of a continuing nature so that redress cannot be had at law. (*Board of Education of Niles Township High School District No. 219 v. Board of Education of Northfield Township High School District No. 225* (1983), 112 Ill. App. 3d 212, 217.) However, a court may enjoin the breach of negative covenants and contracts without applying the ordinary rules governing specific performance of the affirmative covenants. (*Anheuser-Busch Brewing Association v. Dwyer* (1909), 150 Ill. App. 315, 323.) Thus it has been held that, to enforce a negative covenant, the plaintiff need not prove he has an inadequate remedy at law. (*Carlson v. Koerner* (1907), 226 Ill. 15, 19; *Anheuser-Busch*, 150 Ill. App. at 325.) Some courts have held, however, that this last rule applies only to contracts concerning real estate. (*George F. Mueller & Sons, Inc. v. Morales* (1974), 25 Ill. App. 3d 466, 470.) Other cases discuss the reasonableness of restrictive covenants without discussing whether an inadequate remedy at law and irreparable injury need be proved. (See *Akhter v. Shah* (1983), 119 Ill. App. 3d 131, 134; *O'Sullivan v. Conrad* (1976), 44 Ill. App. 3d 752, 756.) While the plaintiffs urge us to find that it is not necessary to prove irreparable harm and inadequate remedy at law to establish the right to a permanent injunction, we need not address that issue because we find that in fact plaintiffs did prove these elements.

■ In the context of noncompetition clauses, businesses deal with the potential loss of future sales. The lost profits arising from potential sales are incapable of adequate computation, and thus money damages are not an adequate remedy. (*Eagle Books, Inc. v. Jones*

(1985), 130 Ill. App. 3d 407, 411.) The loss of customers and sales and the threat of the continuation of such losses to a legitimate business interest are sufficient to show a plaintiff will suffer irreparable injury. (130 Ill. App. 3d at 411.) The loss of a competitive position is an intangible but real damage not readily measurable, and, therefore, the harm suffered by plaintiffs cannot be adequately remedied in law. (*Cross Wood Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282, 286; *Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 137.) Moreover, defendant's breach of the covenant was a continuing, ongoing violation which would require multitudinous proceedings to remedy at law over the five-year extent of the covenant.

Defendant contends that the trial court's findings were not against the manifest weight of the evidence and that plaintiffs' loss of customers was caused by plaintiffs' bad business practices rather than the violation of the covenant. Yet the very inequality of the business skills is the essence of a contract for the purchase of a business with an ancillary noncompetition agreement. It is precisely because a new entrant has relatively undeveloped business skills in that particular industry that the seller should be restrained from competing. A contract for the sale of a business includes an ancillary noncompetition clause to induce the transfer to a buyer who lacks experience. The buyer ordinarily requires time to gain experience on his learning curve until such time as he can compete on an even level with the seller. Noncompetition clauses should be limited in time so that the agreement is no more restrictive than necessary to accomplish this goal so as to prevent injury to the public from a restraint on trade. (*McCook Window Co. v. Hardwood Door Corp.* (1964), 52 Ill. App. 2d 278, 287.) Inherent in the sale of a business is the sale of the goodwill and the customer relations of the old business. If a seller does not convey those intangibles, he has merely sold the hard, physical assets and not the business itself. The purchaser needs protection from the seller drawing customers away from the purchaser upon the seller's reentry into the industry, and the seller agreed to the protection as a necessary part of the contract to sell the business. Protection against the potential loss of these intangible assets is the true test to be applied in determining the necessary duration and territorial extent of the restraint. 52 Ill. 2d at 287-88.

Finally, the plaintiffs contend that the trial court erred by ruling that the injunction could not be enforced over the territorial extent of the restraint. The wording of the plaintiffs' contract did not differ from innumerable other restraints upheld by the courts of this

State. The phrase "in a ten mile radius of the City of Aurora" defines a specific area and is little different from those upheld in *Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 354 (25-mile radius around Kankakee); *Torrence v. Hewitt Associates* (1986), 143 Ill. App. 3d 520, 522 ("within 50 miles"); *Wyatt v. Dishong* (1984), 127 Ill. App. 3d 716, 719 (within 10 miles); or *Cockerill v. Wilson* (1970), 130 Ill. App. 2d 679, 683 ("within a 20-mile radius from Rushville"). While the trial court could take judicial notice that the boundaries of Aurora were constantly changing, there was no evidence that such rapid expansion could make enforcement of the injunction infeasible. It was thus error for the trial court to rule that the proposed injunction was not enforceable on that ground. While there was no evidence that the geographic scope of the noncompetition clause was reasonable, that requirement was not raised as an issue on appeal. While we have doubts, as did the trial court, that the five-year provision was excessive in terms of time, that is, there is no evidence to show that a period of five years was necessary for plaintiffs to learn the carpet cleaning business and build their own customer relations, that issue was not raised on appeal.

To summarize, the trial court entered judgment against plaintiffs for failure to prove irreparable harm and an inadequate remedy at law and because it considered the proposed injunction unenforceable. However, the plaintiffs did have an inadequate remedy at law because their injury was not ascertainable for a money judgment. Defendant's violations of the restrictive covenant were of a continuing nature and thus irreparable. As plaintiffs were not seeking a preliminary injunction, they were not required to prove irreparable injury to maintain the status quo. Finally, there is no evidence to support the conclusion that the proposed injunction would be unenforceable because of the changing boundaries of the City of Aurora. We have addressed only those issues raised by the parties.

For the above reasons the judgment of the trial court is reversed, and the cause is remanded to the circuit court for proceedings consistent with this opinion.

Reversed and remanded.

DUNN and INGLIS, JJ., concur.