RICK WEITEKAMP, d/b/a R.W. Refrigeration Distribution Company, Plaintiff-Appellee, v. CARROLL E. LANE, Indiv. and d/b/a C & L Company, Defendant-Appellant.

Fourth District    No. 4—93—0251

Opinion filed September 9, 1993.

W. Loren Thomson and Kathleen Butler, both of Thomson & Weintraub, of Bloomington, for appellant.

Duane D. Young, of Heckenkamp, Simhauser & LaBarre, P.C., of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

On February 17, 1993, a McLean County circuit judge granted plaintiff Rick Weitekamp's request for a preliminary injunction against his former employee, defendant Carroll Lane. Lane was enjoined from (1) engaging in sales and service of refrigeration units in McLean County businesses operating as purveyors of food; (2) representing in any way that C & L Company, which the trial judge concluded Lane sold to Weitekamp, is anything but part of Weitekamp's company, R.W. Refrigeration; and (3) using or permitting the use of his name or photograph in any advertising to indicate he is in the business of performing commercial refrigeration work for purveyors of food in McLean County. The injunction also applied to purveyors of food outside McLean County if the purveyor had a place of business within McLean County. The injunction expires on March 1, 1994, or when the case is determined on its merits.

Lane contends the trial judge erred by concluding C & L, and not merely its assets, was sold to Weitekamp. Lane argues the preliminary injunction was improper because Weitekamp did not establish a protectable interest in C & L Company or the transfer of C & L's goodwill by Lane to Weitekamp. He next contends the parties' covenant not to compete is unenforceable even as modified by the trial court. He also contends Weitekamp did not establish the injunction was necessary because of emergency circumstances or that serious harm would result absent the relief. Finally, Lane contends Weite-

kamp did not demonstrate it was likely he would succeed on the merits. We disagree and affirm.

## I. FACTS

Lane has been a refrigeration mechanic since 1970. In 1973 he began operating his own business, C & L Company. He serviced commercial refrigeration units in grocery stores, restaurants, and taverns. By 1990 he had approximately 100 to 150 customers, and 99% of his business was in McLean County. Among Lane's customers were Jewel Foods, Holiday Inn, Ramada Inn, Brown's Chicken, Bob Knapp's, Perkins, Wendy's, McDonald's, and local bars and restaurants. His business did not extend to other metropolitan areas in Illinois or nearby States.

Weitekamp and Lane had a conversation during 1989 or 1990 during which Lane suggested selling his business to Weitekamp and working within Weitekamp's operation. Weitekamp asked Lane whether he would be interested in performing the 90-day service work for Weitekamp at locations in Bloomington, Illinois. Lane responded, " '[w]ell, Rick, I would be better off just to sell out and join forces with you.' "

Lane suggested Weitekamp " 'come up with a figure.' " Weitekamp offered $35,000 or $45,000. Lane returned a few days later and said, " 'I will take fifty,' " to which Weitekamp responded, " 'I will give you fifty for the business.' " According to Weitekamp they agreed the accounts Lane currently serviced would be turned over to R.W. Refrigeration.

Weitekamp testified he was most interested in purchasing Lane's business because Lane had been servicing two Eagle food stores, three Jewel food stores, Diana Foods, a Convenient Mart, and a few meat markets. He was not as interested in servicing "some" of the restaurants and taverns. He indicated he did not like to service taverns.

The parties signed a written agreement entitled "sales agreement." The parties disagree about whether Lane sold only assets or his entire business to Weitekamp. As part of their agreement, Weitekamp agreed to employ Lane for at least two years and to pay him union scale. Lane agreed not to compete in the commercial refrigeration or air conditioning business within a 300-mile radius for 10 years. He did not supply Weitekamp with a customer list.

Weitekamp had no interest in retaining or acquiring the name of Lane's company, C & L. Weitekamp testified, "we were making it R.W. Refrigeration, and [the] name C & L [C]ompany was no longer

going to be in existence." According to Lane, he asked Weitekamp if he wanted to use C & L's name and Weitekamp responded he did not know the name so he did not want it.

In May 1992, more than two years after their agreement, Lane voluntarily quit his employment with Weitekamp. After Lane departed from Weitekamp's employment, Weitekamp learned about letters sent to some of his customers which stated C & L Company was now working with Maitland Mechanicals, Inc. (hereinafter Maitland). Lane's signature was on the letter. Maitland had also advertised this relationship in a leaflet which included Lane's picture and indicated C & L was a division of Maitland. Lane testified this letter was distributed to a list of potential customers selected from the telephone book. During the two years Lane was employed by Weitekamp, Lane had access to, and called upon, Weitekamp's customers. These customers extended throughout Illinois and included some which Weitekamp had before the parties' "sales agreement."

Weitekamp testified he lost Eagle food stores' account, valued at $400,000 gross annually, after Lane went to work for Maitland. Weitekamp had been servicing 15 Eagle stores: two in Bloomington, three in Decatur, three in Champaign, one in Jacksonville, three in Springfield, and three in Watseka. Weitekamp testified further the reason he was given for having lost the service contract was because one of his workers had not paid for a quart of milk which he consumed and because Lane had said bad things about R.W. Refrigeration in order to seek the business. According to Weitekamp, while working for Maitland, Lane was servicing two or three of the Eagle stores which Weitekamp previously serviced. He had also lost the Diana Foods store's account back to Lane. Weitekamp had to exert significant time explaining Lane's actions to his clients.

At the close of the evidence, the trial judge concluded the parties' "sales agreement" was a contract for the sale of the entire C & L business, and not merely a contract for the sale of Lane's assets. The trial judge concluded rescission of the contract was not an appropriate remedy because the contract was over 2½ years old. He found Weitekamp had established a protectable interest. He noted advertisements from Maitland indicated Lane had merged his company with Maitland although C & L had been purchased by R.W. Refrigeration.

The trial judge found Lane had agreed not to compete with Weitekamp in any existing line of business, defined by the parties to be refrigeration and air conditioning. The trial judge concluded the business was actually limited to dealing with commercial refrigeration in stores of purveyors of food. He concluded interpreting the covenant

not to compete as covering all air conditioning and refrigeration business would be unnecessarily restrictive to trade because neither company appeared to provide such a broad scope of service.

Based on the above findings, the trial judge granted injunctive relief in favor of Weitekamp, but restricted its scope to protect the interest he actually had purchased from Lane. The judge also concluded the term of 10 years was too long to protect Weitekamp's interest and restricted the term to four years from the date of the contract. He also restricted the injunctive relief to prohibit Lane from engaging in commercial refrigeration business for purveyors of food which have places of business located in McLean County, or to purveyors of food outside McLean County when the purveyor also has a place of business within McLean County.

## II. STANDARD OF REVIEW

The thrust of Lane's appeal is Weitekamp failed to establish the elements necessary to entitle him to preliminary relief. To obtain a preliminary injunction, a party must establish by a preponderance of the evidence that (1) he has a certain and clearly ascertainable right which needs protection; (2) he has no adequate remedy at law; (3) irreparable injury will occur without the injunction; and (4) he has a reasonable likelihood of success on the merits. *Decker, Berta & Co. v. Berta* (1992), 225 Ill. App. 3d 24, 27, 587 N.E.2d 72, 74; *Ron Smith Trucking, Inc. v. Jackson* (1990), 196 Ill. App. 3d 59, 63, 552 N.E.2d 1271, 1275.

A preliminary injunction is issued to preserve the *status quo* until the trial judge considers the merits of plaintiff's claim. The determination of whether injunctive relief is proper is generally left to the trial judge's discretion and is not disturbed on appeal absent an abuse of that discretion. To establish the requisite elements, plaintiff must only demonstrate there is *prima facie* evidence. *City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 432-33, 380 N.E.2d 1106, 1118.

However, where the trial judge's order effectively determines the merits in the case, a reviewing court should evaluate whether the trial judge's conclusion is contrary to the manifest weight of the evidence and whether the trial judge erred. See *Dixon Association for Retarded Citizens v. Thompson* (1982), 91 Ill. 2d 518, 524-25, 440 N.E.2d 117, 120.

■ In his reply brief, Lane contends the latter standard applies here because the evidence presented was "extensive" and the trial judge's order effectively determined the merits of the case. He also

contends because temporary injunctive relief will remain in effect for an additional 11 months, this relief may be the only decision the trial judge will reach. This argument was raised for the first time in Lane's reply brief and is waived. (134 Ill. 2d R. 341(e)(7).) However, if not waived, Lane's contention is not supported by the record. He does not indicate how the additional 11 months the injunction will remain in effect effectively disposes of the issues raised in the case. The injunction does not prevent him from working for Maitland or doing certain refrigeration and air conditioning work. If he prevails on the merits, he will be able to do commercial work for purveyors of food. The issues have not been finally determined.

Moreover, Lane's contention the evidence was "extensive" is contrary to the record on appeal. The only testimony provided was by Lane and Weitekamp. There are many conflicting issues within their testimony which could be more fully developed at a trial on the merits. The record is currently *far* from "extensive." The proper standard of review is whether the trial judge abused his discretion in determining whether Weitekamp provided *prima facie* evidence to support his claim against Lane.

As we noted in *Berta* (225 Ill. App. 3d at 28, 587 N.E.2d at 74-75), in examining a restrictive covenant, a trial judge determines whether the covenant is reasonable. A more restrictive test of reasonableness is applied to restrictive covenants in employment contracts than is applied when the covenant is ancillary to the sale of a business. The reason for this difference is a purchaser in a sale of a business holds more bargaining power than an employee holds in an employment complex.

### III. Covenant Ancillary To Sale Of Business

Lane argues the trial judge erred by concluding the convenant was ancillary to the sale of C & L to Weitekamp. Rather, he contends the parties' agreement was merely a sale of the assets of C & L. Lane correctly notes the agreement refers only to the sale of assets. Although Lane claims the trial judge must have considered evidence outside of the contractual agreement, the trial judge indicated any fair-minded person would have concluded *the agreement* represented the sale of C & L to Weitekamp.

Moreover, the trial judge could have considered the evidence presented at the hearing to determine the intention of the parties to the contract. Determining whether a contract term is ambiguous and requires construction is a question of law for the trial judge. Where terms of the agreement are open to more than one interpretation, evi-

dence of extrinsic facts and circumstances is admissible to determine the parties' intent. *Russell v. Jim Russell Supply, Inc.* (1990), 200 Ill. App. 3d 855, 867, 558 N.E.2d 115, 124.

■ The term "asset," as used in the parties' agreement, could have represented the parties' intention to transfer the business of C & L to Weitekamp. The list of assets to be sold appears to be an entire inventory of C & L, including necessary tools and equipment to operate a refrigeration repair business. It is unlikely Weitekamp would have paid $50,000 for equipment such as ladders and tools. It is more likely this fee was paid for C & L.

Lane contends that because the agreement *did not* refer to the transfer of the trade name, goodwill, or customer lists, this means only the assets and not the business itself were purchased by Weitekamp. We find this argument unpersuasive. He provides no authority which indicates these *must* be listed in an agreement for the trial court or this court to conclude they too were transferred when the business was transferred.

Lane even testified he asked Weitekamp whether he wished to use the name C & L. Why did Lane proffer such an offer if he did not intend to sell his business to Weitekamp? That Weitekamp chose not to use C & L as the name of his business is not dispositive of whether C & L as a business was transferred to him. The trial judge's conclusion at the preliminary stage that the parties' agreement represented the sale of the business of C & L to Weitekamp was not against the manifest weight of the evidence, and Weitekamp made out a *prima facie* case on that issue.

## IV. PRELIMINARY RELIEF

The primary issue upon review is whether the trial judge abused his discretion by concluding the evidence sufficiently established the requisite elements for preliminary relief. Lane argues (1) the covenant not to compete is unenforceable because it served no protectable interest, confidentiality, or goodwill in the property purchased, but instead sought to prevent competition *per se*; (2) the sale of goodwill was not part of the parties' agreement; (3) the covenant should not have been enforced because it imposes unreasonable geographic limitations on his employment possibilities; (4) by modifying the covenant rather than finding it unenforceable, the trial judge failed to consider the inequities in the covenant in favor of Weitekamp; (5) Weitekamp failed to demonstrate an emergency existed and serious harm would result in the absence of the injunction; and (6) Weitekamp failed to demonstrate a likelihood of success on the merits.

■ Lane contends Weitekamp failed to sufficiently establish he had a protectable right to entitle him to preliminary relief. He alleges the covenant is an unenforceable restraint on trade because its purpose is not to protect confidentiality or the goodwill in the property transferred. Rather, its purpose is only to prevent competition *per se*.

Lane's reply brief aptly notes Weitekamp's argument on this issue is unresponsive. However, we will address the propriety of the trial judge's ruling by considering Lane's contentions. Federal court rulings and reasoning are not binding on State appellate courts. Lane relies solely on the Federal district court ruling in *Marathon Petroleum Co. v. Chronister Oil Co.* (C.D. Ill. 1988), 687 F. Supp. 437. Although *Marathon* is persuasive, there is no reason to rely on it because there is sufficient precedent established within our State appellate courts.

### 1. Confidential information

Lane contends there was no confidential information which the covenant could have protected. Weitekamp indicated some customers he had before the agreement with Lane had transferred their business to Lane since Lane ceased employment with him. Weitekamp also indicated that while Lane was employed by him, Lane had access to these customers.

However, the names of these customers were not treated as confidential information. Weitekamp may not be pleased that Lane allegedly provided the names of these customers to Maitland, but in the context of this case, Weitekamp has shown no protectable interest in keeping those names secret. They could be obtained from the yellow pages of telephone directories by Maitland with or without Lane's assistance.

### 2. Goodwill

A more compelling protectable interest for which temporary injunctive relief was properly granted is the goodwill of C & L which is a presumption when a business is sold to another party. "Goodwill" represents the advantages a business has over competitors due to its name, location, and owner's reputation. (*Russell*, 200 Ill. App. 3d at 862-63, 558 N.E.2d at 121.) However, Lane argues this presumption has been overcome because the only interest Weitekamp sought to protect through the covenant was Weitekamp's interest in his customers which existed before the parties' agreement.

Although testimony indicated Lane allegedly convinced previous customers of Weitekamp to receive refrigeration repair services

through the company Lane currently worked at, testimony also indicated Weitekamp lost customers whom he had obtained after the parties' agreement who had previously been C & L's customers. Weitekamp testified he lost the Eagle food store chain and Diana food store as customers *after* Lane began working for Maitland. Lane had testified that before his agreement with Weitekamp he had serviced these customers through C & L.

That Weitekamp was not interested in *all* C & L's previous customers does not automatically destroy the need for temporary injunctive relief. Lane's testimony indicated when he operated C & L he had over 100 customers. Weitekamp's testimony indicated he was *most* interested in several of Lane's customers: two Eagle food stores, three Jewel food stores, Diana Foods, a Convenient Mart, and a few meat markets.

Moreover, where "goodwill" is shown to have a substantial value as asset to the business, a trial judge can conclude it is a property right which should be protected by injunctive relief. (*Russell*, 200 Ill. App. 3d at 862, 558 N.E.2d at 121.) The loss of the Eagle account alone amounted to a loss of $400,000 gross annually for Weitekamp's business. That he would have relied on the reputation of C & L to retain this business is reasonable. That he lost it allegedly due to publicity which Lane knew about and which indicated C & L had merged with Maitland denied Weitekamp his opportunity to profit from the goodwill of C & L.

### 3. Not competition *per se*

Finally, Lane misconstrues Weitekamp's testimony as support for his argument Weitekamp intended only to prevent competition *per se*. Lane's brief states Weitekamp's goal was to ensure "that a company known as C & L" was "no longer going to be in existence" (quoting from Lane's testimony). Weitekamp was responding to an inquiry on direct examination about why he had not wished to use the name C & L for his business. He explained he had already been operating under the name "R.W. Refrigeration" and because he was buying C & L, its name would no longer be in existence. Weitekamp's testimony, if viewed as indicating he entered the agreement with C & L to destroy it, offers some support for Lane's argument. However, on review of the record, we find it was not an abuse of discretion for the trial judge to conclude Weitekamp had a protectable right.

### V. MODIFICATION NOT CONTRARY TO PUBLIC POLICY

Lane argues the trial judge should have refused to enforce

the covenant at all because it was clearly unfair. He relies on *North American Paper Co. v. Unterberger* (1988), 172 Ill. App. 3d 410, 416, 526 N.E.2d 621, 625, for the argument the covenant should not have been enforced because it was overly broad and extremely unfair.

The parties themselves provided for modification by including in the covenant a provision that if the covenant were determined to exceed the appropriate time or geographic scope it "shall be reformed to the maximum time or geographic limitations permitted by the applicable laws." A court may modify the restraints embodied in a covenant not to compete. (*North American Paper Co.,* 172 Ill. App. 3d at 416, 526 N.E.2d at 625.) Lane does not argue the covenant may not be modified. Instead, he argues the covenant is so unfair the court should refuse to enforce it rather than modifying it. Although he claims this covenant was against public policy, the covenant was not extremely unfair nor did it extensively restrain trade.

The covenant in this case is not as extensive as the covenant in the first district case of *Dryvit System, Inc. v. Rushing* (1985), 132 Ill. App. 3d 9, 11, 477 N.E.2d 35, 37, relied on by Lane, in which the covenant contained *no* geographical limitations. Lane contends the covenant was unfair because it restrained him from conducting business miles beyond the territory in which he had previously conducted his business. However, even before their agreement Weitekamp's business extended over a broader geographical region than did Lane's. Ensuring Lane did not compete within these territories was not extremely harsh toward Lane.

Lane also relies on the fact Weitekamp did not service all of Lane's previous customers as evidence the covenant was to ensure Weitekamp did not have competition, rather than to provide service to Lane's previous customers. The evidence did not conclusively establish Lane did not service any of Lane's previous clients other than those specifically noted. In addition, contrary to Lane's characterization, Weitekamp did not state he had *no* interest in servicing tavern and restaurant customers. His statement merely intimated these customers were not his priority customers. This statement does not mean he was not providing, or would not in the near future provide, these customers services.

Contrary to Lane's contention, the covenant did not include "sweeping" restraints unrelated to any legitimate business interest of Weitekamp. The trial judge's decision not to find it unenforceable at this stage was not an abuse of discretion.

## VI. Reasonableness Of Covenant

■ Lane contends the covenant not to compete is unenforceable as written *and* as modified by the trial judge because it imposes an unreasonable geographic limitation upon him regarding areas where he can seek employment. He again notes correctly Weitekamp's briefing of this issue leaves much to be desired. Although Weitekamp does not properly address the issue, we discuss the arguments raised by Lane.

The enforceability of a restraint ancillary to the sale of a business depends on whether the restraint is reasonable with respect to time and territory and is judged by the circumstances of the particular case. The elements of time and territory must be required for the protection of the purchaser, but cannot be oppressive to the seller, and must not be injurious to the interest of the general public. *Russell*, 200 Ill. App. 3d at 864, 558 N.E.2d at 123; *McCook Window Co. v. Hardwood Door Corp.* (1964), 52 Ill. App. 2d 278, 286, 202 N.E.2d 36, 41.

Lane directs this court to an observation in *Russell* (200 Ill. App. 3d at 864, 558 N.E.2d at 123) that for the restraint to be reasonable for the purchaser it must "protect him in the enjoyment and possession of the goodwill of the property transferred to him, and can cover only that territory to which the goodwill extends." However, an earlier first district ruling upon which *Russell* relied for this proposition further expounds on the requirement that time and territory must be reasonable for the purchaser.

In *McCook* (52 Ill. App. 2d at 287, 202 N.E.2d at 41), the court observed the restraint can also cover the territory to which the goodwill *might* be reasonably expected to extend during the existence of the restraint. In the present case, Lane testified he performed services while employed by Weitekamp which occurred outside the McLean County area. On cross-examination, Lane testified he had performed repair work in Watseka, Pekin, and Champaign while he worked for Weitekamp. Weitekamp had testified his services extended through the State of Illinois. While Lane was employed by Weitekamp, his previous reputation from the operation of C & L could have continued to amount to goodwill which Weitekamp could reap. However, this does not conclusively determine whether the limitations which the trial judge placed on the covenant were reasonable.

Lane argues the trial judge's error occurred because he effectively *expanded* the covenant's geographical limitations. The covenant restricted Lane's competition within a 300-mile radius. The trial judge's

modification restricted Lane from working for purveyors of food in McLean County *and* those outside McLean County who had a business within McLean County. Lane argues these establishments include national businesses such as McDonald's, Jewel food stores, Wendy's, Perkins, Bob Evans, *et cetera*, which are located throughout the United States.

The issue is whether the covenant as modified applied only to a geographical area in which the goodwill of C & L could be expected to expand. C & L had never operated outside Illinois. We see no reason to expand the restriction beyond these boundaries and we believe the modified covenant must be so interpreted.

### VII. Emergency And Harm Sufficiently Established

■ Lane correctly notes Weitekamp had to sufficiently establish an emergency existed and his company would experience serious harm if the temporary injunctive relief were not granted. (*Peterson-Jorwic Group, Inc. v. Pecora* (1991), 224 Ill. App. 3d 460, 462, 586 N.E.2d 676, 677-78.) Lane contends Weitekamp's testimony he lost the Eagle food stores' account and Diana Foods was insufficient to show an emergency existed or serious harm was likely. He directs us to Weitekamp's concession he was also informed by Eagle he was losing its account because one of his workers did not pay for a quart of milk the worker consumed. The judge could have reasonably concluded the last factor was not the reason Eagle food stores decided to begin to have Maitland, represented by Lane, service their refrigeration units.

Nor is Lane's argument persuasive that these factors were not sufficiently established because Weitekamp did not produce evidence to demonstrate Eagle food stores or Diana Foods store hired Maitland to obtain services by Lane rather than because they wished to obtain their services from Maitland. The evidence presented established more than mere coincidence to indicate Weitekamp lost these accounts because of Lane's employment with Maitland.

That Weitekamp had already lost an account amounting to $400,000 gross annually, in addition to the Diana food store, was sufficient evidence for the trial judge to conclude an emergency existed and without immediate relief Weitekamp's business would likely suffer serious harm while these proceedings were pending. The trial judge's conclusion was not an abuse of discretion.

### VIII. Likelihood Of Success On Merits

Finally, we reject Lane's contention the evidence did not suggest

1030

it was likely Weitekamp would succeed on the merits. For the reasons discussed above, Weitekamp has a reasonable likelihood of succeeding on the merits of his claim.

Affirmed.

COOK and GREEN, JJ., concur.