CAROL JUNE STICHTER *et al.*, Plaintiffs-Appellants, v. LARRY JOE ZUIDEMA, Defendant-Appellee.

Third District    No. 3—94—0470

Opinion filed January 30, 1995.

Robert J. Noe, of Bozeman, Neighbour, Patton & Noe, of Moline, for appellants Carol June Stichter and David Lee Zuidema.

Robert H. Potter, of Ludens, Potter & Burch, of Morrison, for appellant Jack D. Jones.

Richard A. Palmer, of Ward, Murray, Pace & Johnson, P.C., of Sterling, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiffs, Carol June Stichter, David Lee Zuidema and Jack D. Jones, as administrator of the estate of his mother, Diane Jones, filed an action in which they claimed third-party beneficiary status under a valid antenuptial agreement (agreement). The plaintiffs' father, Elmer Zuidema (Elmer), was a party to the agreement. The circuit court of Whiteside County found the agreement did not confer third-party beneficiary status on the plaintiffs.

The plaintiffs raise three issues on appeal: (1) whether the trial court properly considered extrinsic evidence when it construed the agreement; (2) whether the agreement restricted Elmer's right to make lifetime property transfers; and (3) whether the plaintiffs are third-party beneficiaries of the agreement.

We conclude that the agreement is unambiguous. Therefore, the trial court should not have allowed extrinsic evidence. However, our review of the record and applicable law indicates that the court's judgment was correct in spite of the improperly admitted extrinsic evidence. The court correctly determined that the agreement did not restrict Elmer's right to make lifetime transfers of his property. Also, we agree with the court's conclusion that the plaintiffs are not third-party beneficiaries of the agreement. Accordingly, we affirm.

## FACTS

Elmer had four children by his first marriage: Carol Stichter (Carol); David Zuidema (David); the defendant, Larry Zuidema (Larry); and Diane Jones (Diane). On December 28, 1959, Elmer and Delsa Irene Moret (Irene) executed the agreement. The following provisions are relevant to the case at hand:

> "WHEREAS Elmer Zuidema has four children *** who have by dint of their physical efforts contributed to the aggrandizement of their father's property, and *Elmer Zuidema has an obligation to conserve his estate for the benefit of his children ***.*

\* \* \*

1. [Irene] shall \*\*\* have full right, power, liberty and authority, as fully and in all respects the same as she would if not married, to use, enjoy, manage, convey, mortgage, grant, alienate, and dispose of all and every part of her present and also her future property and estate, of every kind and character, including also the right and power to dispose of same and all and every part thereof by last will and testament \*\*\*.

\* \* \*

3. [Elmer] \*\*\* further agrees with and covenants to [Irene] that he will execute his last will and testament and therein provide that [Irene] shall receive a one-fifth interest in and to all his property (*each of his children likewise to receive one-fifth*) whatever its natur [*sic*] or value may be at the time of his death \*\*\*." (Emphasis added.)

In the agreement, Irene explicitly reserved to herself the power to dispose of her property during her lifetime. The agreement does not contain a similar reservation of Elmer's right to retain control over his property.

On December 30, 1959, Elmer and Irene married. They had one child, Dawn Zuidema (Dawn), who is not a party to this action. Diane died in 1979, leaving a husband and three sons. Jack D. Jones (Jack), one of her sons, is administrator of Diane's estate.

Elmer died testate on April 13, 1991. Elmer's will divided the vast majority of his probate estate into fifths and distributed the portions equally among Irene, Carol, David, Larry, and Dawn. The will contained no provision for Diane's heirs. Elmer's total estate at the time of his death was valued at about $700,000. However, over the years prior to his death, Elmer transferred to Larry about $500,000 in cash, savings accounts, and other personal and real property.

On October 10, 1991, Carol and David filed a complaint against Larry in the circuit court of Whiteside County seeking to recover the transferred property. In the complaint, Carol and David asserted that Elmer identified them in the agreement as third-party beneficiaries with enforceable rights to Elmer's property. According to the complaint, the property transfers to Larry constituted implied-in-law fraud on the rights of Carol and David. They asked the court to impose a constructive trust upon the property. Jack, as the administrator of Diane's estate, filed a similar complaint on August 17, 1992. Jack's petition for leave to intervene in the action was subsequently granted. Hereafter, Carol, David and Jack will be referred to as the plaintiffs.

In November 1993, the case proceeded to a bench trial to

determine the meaning and effect of the agreement. During the trial, the court heard a considerable amount of testimony about the post-agreement conduct of Elmer and Irene. Following the trial, the court issued a written opinion and order on June 6, 1994. In its order, the court made four pertinent findings of fact and conclusions of law.

First, the court found the agreement explicitly fixes Elmer's death as the time to assess the value of his estate. Second, the clause in the agreement assessing the value of Elmer's estate at the time of his death also implicitly reserves to Elmer a right to dispose of his property during his lifetime. Third, the agreement contains only promises and benefits flowing between Elmer and Irene. It does not contain any promises made for the benefit of the plaintiffs. Fourth, the court said the agreement's declaration of Elmer's intention to conserve his estate neither confers third-party beneficiary status on the plaintiffs nor creates any other rights.

Consequently, the court found the plaintiffs were not entitled to any relief. The court did not reach the issue of whether the transfers to Larry constituted implied-in-law fraud. This timely appeal followed.

## EXTRINSIC EVIDENCE

The first issue on appeal is whether the court correctly considered extrinsic evidence in order to ascertain Elmer's intent when he entered into the agreement. We conclude that the agreement is unambiguous. Accordingly, we find it was unnecessary for the court to consider any evidence outside the text of the agreement.

Whether a contract is ambiguous is a question of law for the court to determine. (*Stein v. Scott* (1993), 252 Ill. App. 3d 611, 615, 625 N.E.2d 713, 716.) A contract is ambiguous if it can be understood in more than one sense or it is reasonably susceptible of more than one meaning. (*Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667; *People ex rel. Burris v. Memorial Consultants, Inc.* (1992), 224 Ill. App. 3d 653, 656, 587 N.E.2d 34, 37.) If a contract is not ambiguous, the express provisions govern and there is no need for inquiry into the intention of the parties. (*P.A. Bergner & Co. v. Lloyds Jewelers, Inc.* (1986), 112 Ill. 2d 196, 203, 492 N.E.2d 1288, 1291.) The rules governing the construction of contracts are applicable to antenuptial agreements. *In re Estate of Hopkins* (1988), 166 Ill. App. 3d 652, 656, 520 N.E.2d 415, 417.

Here, Elmer and Irene executed an antenuptial agreement consisting of mutual forbearances of rights in exchange for the mutual assumption of duties. Irene agreed to waive all of her statutory rights to Elmer's estate in exchange for one-fifth of his estate

upon his death. Elmer agreed to execute a will leaving Irene one-fifth of his estate. Elmer also agreed to disclaim his interest in Irene's estate. Finally, they both agreed to hold one bank account as joint tenants.

■ As the agreement explicitly states, Elmer and Irene entered into the agreement in order to resolve matters of property interests prior to their marriage. The agreement is a clear, complete, and specific expression of their intentions. None of the contested terms in the agreement are reasonably susceptible of more than one meaning. As a result, we find no ambiguity in the agreement. Consequently, it was inappropriate for the court to consider extrinsic evidence when it construed the agreement.

Our decision regarding the plaintiffs' remaining contentions rests on a construction of the agreement. When a contract is unambiguous, its construction is a question of law for the court. (*Farm Credit Bank*, 144 Ill. 2d at 447, 581 N.E.2d at 667.) Therefore, our standard of review is *de novo*, and we are not bound by the trial court's decision. (*Bank of Ravenswood v. Polan* (1993), 256 Ill. App. 3d 470, 474, 628 N.E.2d 194, 197.) Accordingly, we will examine only the plain language of the agreement in order to ascertain the parties' intent. We now proceed to a discussion of the plaintiffs' remaining two contentions.

## ELMER'S RIGHT TO MAKE LIFETIME TRANSFERS

Based upon the unambiguous language of the agreement, the plaintiffs argue that Elmer intended to restrict his right to dispose of his property during his lifetime. They rely on Irene's express reservation of the right to hold her property as though she were unmarried. They also note the absence of a similar provision in the agreement reserving Elmer's rights. We do not agree with the plaintiffs' contention. We find nothing in the agreement which restricted Elmer's right to make lifetime property transfers. Also, we conclude that the plain language of the agreement indicates that Elmer intended to retain this right.

A court should not rewrite a contract under the guise of interpretation. (*Wil-Shore Motor Sales, Inc. v. Continental Illinois National Bank & Trust Co.* (1984), 130 Ill. App. 3d 167, 172, 474 N.E.2d 376, 380.) A court will not add language or matters to a contract about which the instrument itself is silent. (*Bergheger v. Boyle* (1994), 258 Ill. App. 3d 413, 417, 629 N.E.2d 1168, 1171; see also *Village of Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 799, 461 N.E.2d 1031, 1035.) Similarly, a court will not add words or terms to an agreement to change the plain meaning of the parties as expressed

in the agreement. (*American States Insurance Co. v. A.J. Maggio Co.* (1992), 229 Ill. App. 3d 422, 427, 593 N.E.2d 1083, 1086.) Where the terms of a contract are clear and unambiguous, they must be enforced as written. *Resolution Trust Corp. v. Holtzman* (1993), 248 Ill. App. 3d 105, 112, 618 N.E.2d 418, 423.

In *Logsdon v. Logsdon* (1952), 412 Ill. 19, 104 N.E.2d 622, *both* parties to an antenuptial agreement expressly reserved the right to hold their respective property interests as though unmarried. In construing the agreement in the *Logsdon* case, our supreme court held that neither party contemplated surrendering their respective rights to dispose of their property during their lifetimes. *Logsdon*, 412 Ill. at 28, 104 N.E.2d at 626.

•2 Here, we conclude that Elmer retained his right to dispose of his property as he wished because the agreement does not explicitly restrict that right. Before Elmer entered into the agreement, he had an absolute right to dispose of his property during his lifetime in any manner he saw fit. (See *In re Estate of Mocny* (1993), 257 Ill. App. 3d 291, 294, 630 N.E.2d 87, 91.) Although the agreement lacks a provision reserving Elmer's reciprocal right to dispose of his property, it contains absolutely *no* language limiting Elmer's property rights with regard to lifetime transfers. The only right he relinquished was his right to inherit part of Irene's estate. Elmer's power to make a will was also subject to his leaving Irene one-fifth of his estate. An examination of the agreement reveals no explicit restriction of Elmer's right to dispose of his property during his lifetime.

Furthermore, we find additional support for our ultimate conclusion in the plain language of the agreement. Paragraph three of the agreement requires a division of Elmer's estate into five equal parts. This scheme is to be used to distribute Elmer's estate "whatever its natur [*sic*] or value may be at the time of his death." The trial court held that this language implicitly reserved to Elmer the right to control the disposition of his property during his lifetime. We agree with the trial court's conclusion on this issue.

Moreover, in the agreement, Elmer did not place a definite value on his estate. This indefinite expression of the extent of his property indicates that Elmer anticipated fluctuations in the total value of his property during his lifetime. The above-quoted language also indicates that Elmer intended an evaluation of his estate at the time of his death and not before. For these reasons, we conclude that the plain language of the agreement evidences Elmer's intent to retain his right to make lifetime transfers of his own property.

Finally, Elmer was not required to insert a term into the agreement in order to reserve his rights. In *Logsdon*, the testator carefully

indicated his intentions in his antenuptial agreement. However, our supreme court in *Logsdon* did not require parties to an antenuptial agreement to reserve rights which the agreement does not address. It is clear that Elmer did not contemplate abrogating his right to make lifetime property transfers because he did not explicitly do so in his antenuptial agreement. Moreover, the agreement contains an implicit reservation of Elmer's right to control his property during his lifetime. For the reasons given, we hold that the agreement in the instant case did not prevent Elmer from making lifetime property transfers.

## THE PLAINTIFFS' THIRD-PARTY BENEFICIARY STATUS

Finally, the plaintiffs argue they are third-party beneficiaries of the agreement. The plaintiffs claim that the language of the agreement which indicated Elmer's intent to "conserve his estate for the benefit of his children" conferred a direct benefit upon them. They also argue the agreement's parenthetical statement that each child would receive one-fifth of Elmer's estate demonstrated his intent to make them third-party beneficiaries of the agreement. For the reasons which follow, we cannot agree with the plaintiffs' interpretation of the agreement.

In Illinois, a person who is not a party to a contract may recover for its breach if the contract provides a direct benefit to that person. (*People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 384, 400 N.E.2d 918, 919; *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 257, 178 N.E. 498, 501.) Whether a person is directly benefitted depends on the intentions of the parties as expressed in the agreement. (*Resnik*, 78 Ill. 2d at 385, 400 N.E.2d at 919; *Carson Pirie Scott*, 346 Ill. at 258, 178 N.E. at 501.) A third party may recover only if one of the parties to the contract makes a promise for the third party's direct benefit. *Resnik*, 78 Ill. 2d at 386, 400 N.E.2d at 919; *Carson Pirie Scott*, 346 Ill. at 258, 178 N.E. at 501.

There is a strong presumption that the parties to a contract intend for its provisions to apply only to them and not to third parties. (*155 Harbor Drive Condominium Association v. Harbor Point Inc.* (1991), 209 Ill. App. 3d 631, 647, 568 N.E.2d 365, 375.) To overcome that presumption, an intent to benefit a third party must affirmatively appear from the language of the instrument as a whole. (*Nikolic v. Seidenberg* (1993), 242 Ill. App. 3d 96, 101, 610 N.E.2d 177, 180.) The contract must clearly show that it was made for the third party's direct benefit. *Chicago Title & Trust Co. v. Weiss* (1992), 238 Ill. App. 3d 921, 926, 605 N.E.2d 1092, 1096.

In the factually similar case of *Logsdon*, Curtis Logsdon had three

children by his first marriage. He entered into an antenuptial agreement with his second wife. That agreement contained a paragraph indicating that all of Curtis' property would "descend" to his children by his first marriage. Based on this provision, the children argued that they became third-party beneficiaries of their father's antenuptial agreement. Our supreme court disagreed, noting that the agreement as a whole did not restrict Curtis' right to dispose of his property as he wished. The supreme court held that Curtis did not enter into the antenuptial agreement for his children's direct benefit. Therefore, the children were not direct beneficiaries of the agreement. *Logsdon*, 412 Ill. at 27-28, 104 N.E.2d at 626.

●3 The agreement which we are reviewing here does not contain a clear statement of *any* promise made for the direct benefit of the plaintiffs. The agreement contains promises from Elmer to Irene and *vice versa*. Elmer promised to execute a will leaving one-fifth of his estate to Irene in exchange for Irene's promise to forego her statutory right to one-third of Elmer's estate. The parenthetical expression of Elmer's intention to leave the other four-fifths of his estate to his children is *only* a statement of his intention. The statement does not constitute a promise that Elmer would in fact make a will which would leave the remainder of his property to the plaintiffs.

Similarly, Elmer's statement of his intention to "conserve his estate for the benefit of his children" is not a promise to Irene or the plaintiffs that he would refrain from making lifetime transfers of his property. Moreover, the statement is not a promise from Elmer to Irene or the plaintiffs that Elmer would leave his property to the plaintiffs. Rather, it is merely a recital of Elmer's preferred disposition of much of his estate at the time the agreement was made. The fact that Elmer retained his right to dispose of his property during his lifetime lends further support to our analysis. See *Logsdon*, 412 Ill. at 27-28, 104 N.E.2d at 626.

The plaintiffs insist the cases of *Miller v. Miller* (1987), 163 Ill. App. 3d 602, 516 N.E.2d 837, and *Joslyn v. Joslyn* (1944), 386 Ill. 387, 54 N.E.2d 475, control the result in the case at hand. We do not agree. In *Miller*, a father agreed to pay the college expenses of his son as part of a property settlement agreement with his son's mother. The court held the son was a third-party beneficiary of the settlement agreement. (*Miller*, 163 Ill. App. 3d at 612-13, 516 N.E.2d at 844-45.) In *Joslyn*, a husband agreed to pay $20,000 in notes secured by a trust deed. In return, the wife agreed to execute a will leaving the marital home to their four children. Our supreme court held the children were third-party beneficiaries of their parents' agreement. *Joslyn*, 386 Ill. at 400-01, 54 N.E.2d at 481.

We find these cases readily distinguishable. The contracts at issue in *Miller* and *Joslyn* contained clear, unequivocal duties undertaken for a third party. Moreover, in those cases the third parties received a benefit as a direct result of a promise or performance guaranteed by the contracts. In contrast, the agreement here contains no promises to perform for the benefit of the plaintiffs. Consequently, we conclude that *Miller* and *Joslyn* have no application to the facts of this case.

Finally, we conclude that the agreement in question demonstrates the intent of Elmer and Irene to settle property matters prior to their marriage. They also intended to maintain separate ownership of their respective property interests during their lifetimes and at death to limit each other's share of their estates. We find the agreement does not demonstrate a clear intention to confer a direct benefit upon the plaintiffs. Accordingly, the plaintiffs are not third-party beneficiaries of the agreement and are not entitled to any relief.

## CONCLUSION

We have previously determined that it was unnecessary for the trial court to consider extrinsic evidence when it gave construction to the agreement. Nevertheless, we conclude that the trial court's decision was correct based upon the unambiguous language of the agreement. We find nothing in the agreement which restricts Elmer's right to make lifetime transfers of his property. Moreover, the law does not require Elmer to make an express reservation of his rights. Finally, we hold that the plaintiffs are not third-party beneficiaries of the agreement because it contains no promises made for the plaintiffs' direct benefit.

In light of our holding, we find it unnecessary to consider the other contentions raised in this appeal. For the reasons indicated, the judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

SLATER and BRESLIN, JJ., concur.