SECOND DIVISION

OCTOBER 6, 1998

1-97-3869

JOHN R. SHEEHY, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellant, ) COOK COUNTY,

) ILLINOIS

)

v. ) No. 94-CH-1278

)

JAMES R. SHEEHY, ) THE HONORABLE 

) THOMAS P. DURKIN,

Defendant-Appellee. ) JUDGE PRESIDING.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff filed an emergency motion to enforce a covenant not to compete ancillary to the contract sale of John Sheehy & Sons Funeral Home, Ltd.  The trial court denied the motion.  On appeal, plaintiff contends that:  (1) the trial court misconstrued the covenant not to compete; (2) the trial court's denial of injunctive relief by refusing to enforce the covenant not to compete was contrary to applicable law and contrary to the manifest weight of the evidence; and (3) the trial court's denial of noninjunctive relief was contrary to applicable law.

BACKGROUND

This action initially arose out of a verified complaint for accounting, injunction, dissolution and appointment of a custodian or receiver filed on February 9, 1994, by plaintiff, John R. Sheehy, against John Sheehy & Sons Funeral Home, Ltd. (Funeral Home), defendant James R. Sheehy, and Michael Sheehy.  On September 11, 1995, pursuant to the provisions of section 12.56 of the Illinois Business Corporation Act of 1983 (805 ILCS 5/12.56 (West Supp. 1995)), the trial court conducted an open bidding process that resulted in the court's acceptance of plaintiff's election 
to purchase defendant's shares in the Funeral Home along with the beneficial interest in land trust 88-

434, which held title to the real property on which the Funeral Home operated its business.

On November 3, 1995, the purchase was memorialized in a definitive agreement (agreement) that was executed by the parties.  Per the terms of the Agreement, the purchase price would be payable in four annual installments in consideration of a four-year covenant not to compete (covenant) found in section F of the agreement.  The covenant reads, in pertinent part:

"For a period of four years from the date of this Agreement, in consideration of this Agreement, [defendant] shall not:

a)  Directly or indirectly own, manage, operate, join, control, or participate in, or be connected as an officer, employee, partner, or otherwise with any funeral home business, or otherwise compete with the current business of the Company within a ten (10) mile radius of 7020 W. 127th Street, Palos Heights, Illinois (the 'Property').

b)  Canvass or solicit any business, individually 

or for any other funeral home, from any of the 

Company's prepaid clients or any member of the 

immediate family of any decedent for whom the Company 

has provided funeral services prior to the date hereof

 (collectively, 'Protected Clients') or from any 

potential clients within a 10 mile radius of the 

Property, provided however that nothing contained in 

this Section F shall preclude [defendant] from 

servicing clients who approach [defendant] of their own 

free will and accord provided further that such 

services are not provided in a funeral home within a 

ten mile radius of the Property."

Following the purchase, the original complaint was dismissed, with prejudice; however, the court retained jurisdiction to enforce the terms of the agreement.

On or about May 20, 1996, defendant became the managing funeral director of a branch of the SCI/Blake-Lamb Funeral Home.
(footnote: 1)  The branch was located at 544 W. 31st Street, Bridgeport, Chicago, Illinois (Bridgeport location).  SCI/Blake-Lamb has various branch locations within the 10-mile restricted zone; however, defendant's employment was limited to working at the Bridgeport location, which is outside the 10-mile restricted zone.

Since beginning employment at the Bridgeport location, defendant attended continuing education classes and two business meetings with a superior at SCI/Blake-Lamb's Oak Lawn location, which is within the 10-mile restricted zone.  He also appeared in his capacity as an employee of SCI/Blake-Lamb for funeral services at cemeteries located within the 10-mile restricted zone.

On November 4, 1996, plaintiff filed an emergency motion, which sought to enforce the covenant and impose sanctions and injunctive relief, naming his identical twin brother as defendant.  Plaintiff's motion alleged that defendant breached the covenant by participating in certain activities within 10 miles of the Funeral Home located at 7020 W. 127th Street in Palos Heights, Illinois.  Additionally, plaintiff requested that the first installment then due under the covenant be forfeited, along with all future installments, until compliance with the covenant was ensured.

A hearing on the emergency motion was held on December 11, 1996, and continued to July 15, 1997.  Following the hearing on July 15, 1997, the trial court denied plaintiff's emergency motion.  Plaintiff appeals.

We affirm.

ANALYSIS

I

Plaintiff initially contends that the trial court misconstrued the covenant in that its clear and unambiguous language prohibits defendant from being employed by SCI/Blake-

Lamb, from attending continuing education classes and business meetings at a SCI/Blake-Lamb branch funeral home located within the 10-mile radius, and from conducting funeral director activities as an employee of SCI/Blake-Lamb at cemeteries located within the 10-mile radius.

It has been held that a contract is ambiguous if it can be understood in more than one sense or it is reasonably susceptible of more than one meaning.  
P.A. Bergner & Co. v. Lloyd's Jewelers, Inc.
, 112 Ill. 2d 196, 203, 492 N.E.2d 1288, 1291 (1986).  When a contract is unambiguous, its construction is a question of law for the court.  
Farm Credit Bank v. Whitlock
, 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667 (1991).  The parties agree that the language of the covenant is clear and unambiguous.  As such, the language must be given its ordinary and natural meaning.  
Srivasta v. Russell's Barbecue, Inc.
, 168 Ill. App. 3d 726, 730, 523 N.E.2d 30, 33 (1988).  Accordingly, we will examine only the plain language of the agreement in order to ascertain the parties' intent.  See 
Stichter v. Zuidema
, 269 Ill. App. 3d 455, 459, 646 N.E.2d 296, 299 (1995).  

In the case 
sub judice
, plaintiff contends that the trial court misconstrued the language of the covenant in denying his emergency motion.  The covenant states that defendant may not "directly or indirectly own, manage, operate, join, control, or participate in, or be connected as an officer, employee, partner, or otherwise with any funeral home business, or otherwise compete with the current business of the company 
within
 
a ten (10) mile radius" of the Funeral Home.  Contract language must not be rejected as meaningless or surplusage; therefore, it is presumed that the terms and provisions of a contract are purposely inserted and that the language was not employed idly.  
Lempa v. Finkel
, 278 Ill. App. 3d 417, 428, 663 N.E.2d 158, 166 (1996).  A court will neither add language or matters to a contract about which the instrument itself is silent, nor
 add words or terms to an agreement to change the plain meaning of the parties as expressed in the agreement.  
Stichter
, 269 Ill. App. 3d at 459-

60, 646 N.E.2d at 299.  However, a court may modify the restraints embodied in a covenant not to compete.  
Weitekamp v. Lane
, 250 Ill. App. 3d 1017, 1027, 620 N.E.2d 454, 461 (1993).

Defendant is affiliated with a funeral home business with branches within the 10-mile restricted zone that compete with plaintiff's funeral home business.  However, on review, we conclude that defendant's employment at a funeral home branch located outside the 10-mile restrictive zone does not violate the covenant.  Although the parties disagree whether the ordinary meaning of the words in the covenant preclude defendant from being connected as an employee or otherwise to any SCI/Blake-Lamb funeral home within the 10-mile radius even though he is employed at a branch location outside of the 10-mile restricted zone, contract language is not ambiguous simply because the parties do not agree upon its meaning.  
Srivasta
, 168 Ill. App. 3d at 992, 523 N.E.2d at 35.  The language of the covenant precludes defendant from participating with a funeral home business or otherwise compete with plaintiff's business within a 10-mile radius; however, if we were to interpret the covenant as precluding defendant's employment by 
any
 funeral home that has branches within the restricted zone even if he does not work within the restricted zone, the covenant's proscription would be too broad.  
Lee/O'Keefe Insurance Agency, Inc. v. Ferega
, 163 Ill. App. 3d 997, 1005-06, 516 N.E.2d 1313, 1319 (1987).

Moreover, we agree with the trial court regarding the effect of defendant attending continuing education classes and business meetings within the 10-mile restricted zone.  In our view, no adverse effect has been shown by plaintiff as a result of defendant's attendance at the classes and meetings.  Insofar as the classes are concerned, defendant is required to attend the classes pursuant to being licensed as a funeral director.  See 225 ILCS 41/10~35 (West 1994).  We hold that the defendant's presence within the 10-mile radius to attend classes and business meetings was not participation in the funeral business of another, or otherwise competition with plaintiff's business.  

The defendant entered the restricted zone on two occasions to attend business meetings at the Oak Lawn location per the request of SCI/Blake-Lamb officials.  Rosemarie Lamb, the president of Blake-Lamb Funeral Homes, testified that the meetings were held at the Oak Lawn location because the computer program for the Bridgeport location's budget was only available at that office.  Further, she stated that the second meeting was to disseminate information to managers regarding their individual locations and company policy.  We note that the defendant testified that marketing strategies and dealings with competitors were discussed at the second meeting; however, there is no evidence supporting plaintiff's assertion that discussion at the business meetings related to funeral businesses operating within the restricted zone.  The trial court ruled that the attendance at the meetings would be considered a technical violation.  The trial court further ruled that even if defendant were enjoined from attending the meetings at the Oak Lawn location, the effect would be 
de minimis
.  We agree.

Plaintiff also contends that the defendant violated the covenant by conducting funeral director activities at cemeteries located within the 10-mile radius and that subparagraph (b) of the covenant does not provide an exception to the restrictions set forth in subparagraph (a).  Subparagraph (b) provides that defendant shall not canvass or solicit any business, individually or for any other funeral home, from the company's prepaid or potential clients within a 10-mile radius of the Funeral Home.  It also states that nothing contained in the covenant precludes defendant from servicing clients who approach him of their own free will so long as those services are not provided in a funeral home within a 10-mile radius of the Funeral Home.

Defendant contends that subparagraph (b) of the covenant is a "safe harbor" that limits the instances when defendant can solicit protected clients or when defendant services clients at a funeral home within the restricted zone.  He further asserts that, "[b]y referencing Section F in the body of the safe harbor provision, it is clear that the parties intended to allow Defendant to work at another funeral home provided that it was outside the restricted area."  The trial court agreed with defendant's interpretation that subparagraph (b) modified subparagraph (a).  The trial court further ruled that, according to the principles of contract construction, the preclusion of defendant from entering cemeteries within the 10-mile radius should have been stated within the covenant, if intended.  

In our view, the trial court's interpretation of subparagraph (b) of the covenant was too broad.  We do not agree with the trial court's interpretation that subparagraph (b) modified subparagraph (a) of the Covenant.  Subparagraph (b) precludes defendant from soliciting any business from "protected clients" and also precludes defendant from soliciting business from any potential clients within a 10-mile radius of the Funeral Home.  However, subparagraph (b) relates to protected clients because they are the only ones with restrictions imposed.  Defendant is not precluded from servicing any client; clients may freely approach defendant if such services are not provided within a 10-mile radius of the Funeral Home.

We agree with the trial court that any preclusion of defendant from entering cemeteries within a 10-mile radius should have been stated within the covenant.  Restrictive covenants are strictly construed.  
St. John's Evangelical Lutheran Church v. Kreider
, 54 Ill. App. 3d 257, 260, 369 N.E.2d 370, 372 (1977).  Moreover, although we disagree with the court's interpretation of subparagraph (b) as a safe harbor for defendant, based upon our interpretation of the covenant on appeal, the trial court's incorrect view that subparagraph (b) modified subparagraph (a) is harmless and of no consequence.

It is undisputed that defendant, in his capacity as a funeral director employed by SCI/Blake-Lamb, attended the burials of his Bridgeport-location clientele at cemeteries within the 10-

mile radius.  However, due to the nature of funerals, the place of the burial is determined by the family members rather than the undertaker.  Funeral homes operate in a service industry; therefore, a person is entitled to his or her choice regarding burial plots and funeral services.  The funeral director simply honors that choice.  The language of the covenant does not expressly preclude defendant from attending cemeteries, and precluding defendant from doing so would be violative of public policy.  See 
Tarr v. Stearman
, 264 Ill. 110, 118, 105 N.E. 957, 960-61 (1914) (if a contract is so injurious to the public interests that public policy requires that it should not be enforced, it will be held void).

II

Plaintiff next contends that the trial court's denial of injunctive relief by refusing to enforce the covenant was contrary to applicable law and against the manifest weight of the evidence.  Plaintiff specifically asserts that:  (1) he has a protectable business interest; (2) the restrictions of the covenant are necessary to protect his business interest; (3) the restrictions of the covenant are not oppressive to defendant; (4) the restrictions of the covenant do not injure the public; and (5) he is entitled to injunctive relief through the enforcement of the covenant.

It is well settled that a party seeking to preserve the 
status quo indefinitely by means of a permanent injunction must show that he possesses a clear, protectable interest for which there is no adequate remedy at law and that irreparable injury would result if the relief is not granted.  
Hamer Holding Group, Inc. v. Elmore
, 202 Ill. App. 3d 994, 1006-07, 560 N.E.2d 907, 915 (1990).  The burden of proof is heavier for obtaining permanent, as compared to preliminary, injunctive relief.  
Hamer Holding Group, Inc.
, 202 Ill. App. 3d at 1007, 560 N.E.2d at 915.  For purposes of a permanent injunction, an inadequate remedy can be the threat of irreparable harm or other harm that cannot be adequately corrected by the payment of monetary damages.  
Petrzilka v. Gorscak
, 199 Ill. App. 3d 120, 124, 556 N.E.2d 1265, 1268 (1990).  

The present case involves a covenant ancillary to the sale of a business.  The enforceability of such a restraint depends on the reasonableness of the restraint as to time and territory as judged by the circumstances of the particular case.  
Russell v. Jim Russell Supply, Inc.
, 200 Ill. App. 3d 855, 864, 558 N.E.2d 115, 123 (1990); 
Weitekamp
, 250 Ill. App. 3d at 1028, 620 N.E.2d at 462.  The inquiry into reasonableness can be divided into three elements:  "the restraint as to time and as to territory must be necessary in its full extent for the protection of the purchaser, but must at the same time not be oppressive on the seller, and must not be injurious to the interests of the general public."  
Russell
, 200 Ill. App. 3d at 864, 558 N.E.2d at 123; see also 
Hamer Holding Group, Inc.
, 202 Ill. App. 3d at 1009, 560 N.E.2d at 917.

In order for the restraint to be reasonable for the purchaser, it must protect him in the enjoyment and possession of the goodwill
(footnote: 2) of the property transferred to him and can cover only that territory to which the goodwill extends.  
Russell
, 200 Ill. App. 3d at 864, 558 N.E.2d at 123.  A covenant ancillary to the sale of a business, as in the present case, ensures the buyer that the former owner will not walk away from the sale with the company's customers and goodwill, leaving the buyer with an acquisition that turns out to be only chimerical.  
Hydroaire, Inc. v. Sager
, 98 Ill. App. 3d 758, 767, 424 N.E.2d 719, 726 (1981).  Further, in protecting the goodwill sold, the courts consider the fact that the bargaining position is not uneven, as it is generally in an employer/employee relationship, and that the courts are less likely to declare the sale of a business post-employment restraint invalid.  
Hamer Holding Group, Inc.
, 202 Ill. App. 3d at 1007-08, 560 N.E.2d at 916
.

In the case 
sub judice
, plaintiff asserts that his protectable interest is the goodwill of the Funeral Home obtained upon purchase.  In support of his contention, plaintiff points the court to the preamble of the covenant, which states:

"Both [plaintiff] and [defendant] recognize that the funeral business is one of a personal service nature where the reputation and personality of the individuals involved are most influential in obtaining business.  Further, [plaintiff] and [defendant] acknowledge that due to their long term business relationship for both to now operate separate funeral businesses within the same geographic area would most likely cause both businesses to be unsuccessful as the demographics would not support two independent and separate funeral business operations by family members."

Further evidence was presented that the Sheehy family offered funeral home services to communities within the Chicago area for over 70 years and that the Funeral Home in Palos Heights was founded by both parties in 1978 to honor their father.  

Plaintiff sought to protect the Funeral Home against competitors with its name, location and reputation, and specific conditions were laid out in the covenant to ensure this protection.  See 
Weitekamp
, 250 Ill. App. 3d at 1025, 620 N.E.2d at 460.  "[W]here [such] 'goodwill' is shown to have a substantial value as asset to the business, a trial judge can conclude it is a property right which should be protected by injunctive relief."  
Weitekamp
, 250 Ill. App. 3d at 1026, 620 N.E.2d at 460-61.  Additionally, based upon the language of the preamble and the purpose of the covenant, the restriction in the covenant for a 10-mile radius over a period of four years would appear to be reasonable for the plaintiff as purchaser.  However, in broadening the proscription to preclude defendant from being employed by any funeral home business with locations within the restricted zone, even where defendant does not work within the restricted zone or perform any "funeral business" within the restricted zone that would compete with plaintiff, the restriction in the covenant becomes unreasonable.  
Weitekamp
, 250 Ill. App. 3d at 1028-29, 620 N.E.2d at 462.

It has been held that any 
threatened business interest is an identifiable right that may be protected by injunctive relief.  
Central Water Works Supply, Inc. v. Fisher
, 240 Ill. App. 3d 952, 959, 608 N.E.2d 618, 623 (1993).  "The loss of customers and sales and the 
threat of the continuation of such loss
 to a legitimate business interest is sufficient to show that plaintiff will suffer irreparable injury unless protected by the court."  (Emphasis added.)  
Central Water Works Supply
, 240 Ill. App. 3d at 959, 608 N.E.2d at 623.  Plaintiff, however, testified that he was unable to identify any loss of business, or the threat of a continuation of such loss, as the result of defendant's attendance at either the SCI/Blake-Lamb Oak Lawn location for continuing education classes and business meetings, or his appearance as an employee of SCI/Blake-Lamb at cemeteries located within the 10-mile radius.  No evidence was presented to the court that indicated that the Funeral Home's business was even threatened due to defendant's appearances within the 10-mile radius although plaintiff presents argument regarding defendant being his identical twin.

Defendant testified that he never conducted funerals from funeral homes within the 10-mile radius, nor did he conduct funerals for any decedent who lived within the 10-mile radius.  He further acknowledged that he did not solicit any business from any families within the 10-mile radius.  Consequently, as no loss has been identified by plaintiff indicating a threatened business interest, we cannot agree that he has a protectable interest for which there is no adequate remedy at law and that any irreparable injury would result if the permanent injunction is not granted.

Restrictive covenants accompanying the purchase of assets, as previously noted, are more favorably viewed than those connected with the employer/employee arrangements because of the arm's length bargaining position of the parties.  
Russell
, 200 Ill. App. 3d at 865, 558 N.E.2d at 123; 
Diepholz v. Rutledge
, 276 Ill. App. 3d 1013, 1016, 659 N.E.2d 989, 991 (1995).  "Since the seller, in determining the sale price, usually included therein the value of its good will, which value is enhanced by the agreement not to compete, the showing of hardship [to him] must be substantial."  
O'Sullivan v. Conrad
, 44 Ill. App. 3d 752, 757, 358 N.E.2d 926, 930 (1976).  In fact, it has been stated that the hardship must be "much greater, relatively speaking, than the ensuing advantage to the purchaser."  
O'Sullivan
, 44 Ill. App. 3d at 757, 358 N.E.2d at 930.  In the present case, we believe that the hardship imposed on defendant will be irreparably harsh in comparison to the speculative allegations of injury presented to the trial court.
  See 
O'Sullivan
, 44 Ill. App. 3d at 757, 358 N.E.2d at 930.

The president of Blake-Lamb Funeral Homes, Rosemarie Lamb, was called as an expert in the funeral home industry and testified that because of the covenant, SCI/Blake-Lamb made sure the defendant only worked out of the Bridgeport location.  She asserted that if defendant were precluded from entering cemeteries within the 10-mile radius to conduct funeral services at cemeteries, he would be unemployable by SCI/Blake-Lamb or any other funeral home.  Because SCI owns funeral homes throughout the Chicagoland area, if we were to interpret the covenant to preclude defendant from being employed by any SCI/Blake-Lamb location, or any other funeral business with locations within the 10-mile radius, we would effectively be denying defendant the opportunity to work in a profession he has been employed in for 27 years.

It has been held that "[n]oncompetition clauses should be limited in time [and territory] so that the agreement is no more restrictive than necessary *** so as to prevent injury to the public from a restraint on trade."  
Petrzilka
, 199 Ill. App. 3d at 125, 556 N.E.2d at 1269.  Although the covenant was entered into by the parties in consideration of $213,500, such a provision precluding the defendant the opportunity to be employed anywhere in Chicago is unreasonable and unenforceable.  Further, covenants not to compete are carefully scrutinized by courts to ensure that their intended effect is not the prevention of competition 
per se
.  
Central Water Works Supply v. Fisher
, 240 Ill. App. 3d at 956, 608 N.E.2d at 621
.  Consequently, denying defendant the opportunity to work is a restraint on trade that is abhorred by the courts.  See 
Vander Werf v. Zunica Realty, Co.
, 59 Ill. App. 2d 173, 179, 208 N.E.2d 74, 77 (1965); 
Russell
, 200 Ill. App. 3d at 864, 558 N.E.2d at 122. 

Although defendant is not working within the restricted zone or competing with the Funeral Home, plaintiff still seeks to restrain his employment.  In our view, such restriction is unreasonable and a violation of public policy.  See 
People ex rel. Peabody v. Chicago Gas Trust Co.
, 130 Ill. 268, 293-94, 22 N.E. 798, 803 (1889).  Further, any interpretation of the covenant that precludes defendant from attending continuing education classes or business meetings regarding his employment as a funeral director, and further precludes him from entering cemeteries within the 10-mile radius, would be an unreasonable restraint on trade as to time and territory and is, therefore, unenforceable.  See 
Russell
, 200 Ill. App. 3d at 865, 558 N.E.2d at 123.  Accordingly, in our view, the trial court's denial of injunctive relief was neither contrary to applicable law nor against the manifest weight of the evidence.

III

Plaintiff finally contends that the trial court's denial of noninjunctive relief is contrary to applicable law, citing 
Lempa v. Finkel
, 278 Ill. App. 3d 417, 663 N.E.2d 158 (1996), in support of its contention.  Plaintiff's reliance on 
Lempa
 is inapposite.

In 
Lempa
, vendors brought action against the purchasers of a dry cleaning business for breach of a mortgage note, and the purchasers counterclaimed on various grounds.  
Lempa
, 278 Ill. App. 3d at 421, 663 N.E.2d at 161.  The court held that "[a] party seeking to recover has the burden to establish that he sustained damages and a reasonable basis for computation of those damages."  
Lempa
, 278 Ill. App. 3d at 430, 663 N.E.2d at 167-68.  Because the plaintiffs in 
Lempa
 failed to supply the trial court, either at trial or in their posttrial motion, a reasonable basis for computing the additional interest they claimed was owed, the court did not award them the damages requested.  
Lempa
, 278 Ill. App. 3d at 430, 663 N.E.2d at 168.  
Lempa
's holding, although not contrary to plaintiff's assertion that noninjunctive relief should follow as a matter of course once a breach has been established, is inapplicable inasmuch as no breach of the covenant has been committed and no damages have been established.

Accordingly, we hold that the trial court's denial of noninjunctive relief conformed to applicable law.  The decision of the circuit court is affirmed.

Affirmed.

RAKOWSKI and McNULTY, JJ., concur.

FOOTNOTES
1:     
  A stipulation of facts by the parties indicates that Blake-Lamb Funeral Homes is owned by Service Corporation International (SCI) headquartered in Houston, Texas.  SCI owns 3,000 funeral chapels in the world with chapels in the following major cities:  Paris, New York, Montreal, and Melbourne.

2:     
  "Goodwill" represents the advantages a business has over competitors due to its name, location, and owner's reputation.  
Weitekamp
, 250 Ill. App. 3d at 1025, 620 N.E.2d at 460; 
Russell
, 200 Ill. App. 3d at 862-63, 558 N.E.2d at 121.