YELLOW CAB COMPANY, Plaintiff,

v.

CITY OF CHICAGO, et al., Defendants.

No. 97 C 8753.

United States District Court,
N.D. Illinois,
Eastern Division.

April 30, 1998.

Susan Getzendanner, Charles F. Smith, Jr., Michael Stephen Terrien, Sanjay K. Chhablani, Amarjeet Singh Bhachu, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Plaintiff.

Patrick Walter Johnson, City of Chicago, Law Dept. Corp. Counsel, Weston Wayne Hanscom, Marc E. Odier, City of Chicago, Dept. of Law, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Yellow Cab Company ("Yellow Cab") brought this lawsuit against the City of Chicago ("City") and Caroline O. Shoenberger, Commissioner of the City's Department of Consumer Services ("Commissioner"). In count I, Yellow Cab alleges common law breach of contract. In count II, Yellow Cab alleges impairment of contract in violation of Article I, § 10, Clause 1 of the U.S. Constitution. In count III, Yellow Cab alleges impairment of contract under Article I, § 16 of the Illinois Constitution. Yellow Cab asserts that jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 because the impairment of contract claim in count II arises under the U.S. Constitution. Yellow Cab therefore alleges that the court may exercise supplemental jurisdiction over counts I and III under 28 U.S.C. § 1367 because those claims form part of the same case or controversy. Defendants move to dismiss all three counts of Yellow Cab's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the court grants defendants' motion to dismiss count II and therefore dismisses this suit for lack of subject matter jurisdiction. The court expresses no opinion as to the viability of counts I and III.

### Background

In April 1987, the City of Chicago and Yellow Cab entered into a settlement agreement in which Yellow Cab and two other named cab companies agreed to drop a lawsuit against the City. In exchange for dropping the lawsuit, the City agreed to enact an ordinance, Municipal Code of Chicago § 28–19.[1] (Compl.¶ 33.) The parties made the settlement agreement contingent on the ordinance, which expressly stated "... this ordinance shall operate as a contract between [Yellow Cab] and the city ..." (Compl.¶¶ 33–34.)

The underlying dispute between the City and the cab companies concerned a restriction the City attempted to impose governing the assignment of taxicab medallions. (Compl.¶ 31.) The resulting ordinance addressed not only medallion owners' property rights in the medallions, but also the concentration of medallion ownership. (Compl.¶¶ 36–37.) With respect to the concentration of medallion ownership, the ordinance included the following provisions:

(d) Notwithstanding the provisions of Section 28–19(c), Yellow Cab Company ... shall, ... subject to the provisions of Section 28–19(e), relinquish and not renew, and relinquish irrevocably any claim of a right to renew, 1,300 licenses, as follows: (1) 400 licenses for and after the year beginning January 1, 1988; (2) 100 licenses for and after the year beginning January 1, 1989; (3) 100 licenses for and after the year beginning January 1, 1990; (4) 100 licenses for and after the year beginning January 1, 1991; (5) 100 licenses for and after the year beginning January 1, 1992; (6) 100 licenses for and after the year beginning January 1, 1993; (7) 100 licenses for and after the year beginning January 1, 1994; (8) 100 licenses for and after the year beginning January 1, 1995; (9) 100 licenses for and after the year beginning January 1, 1996; (10) 100 licenses for and after the year beginning January 1, 1997. However, [Yellow Cab] ... may choose not to renew licenses sooner than provided herein, but they shall not include in the number not renewed pursuant to this

---

1. MCC § 28–19 later became MCC § 9–112–010 *et seq.*

agreement any licenses ineligible for renewal due to their surrender or revocation pursuant to provisions of this chapter or the rules and regulations promulgated by the commissioner of consumer services for the enforcement of this chapter. Furthermore, [Yellow Cab] ... shall not own in whole or in part, directly or indirectly, or have a security interest in a greater number of licenses in the years specified than as here set forth: 3,248 in 1988; 3,148 in 1989; 3,048 in 1990; 2,948 in 1991; 2,848 in 1992; 2,748 in 1993; 2,648 in 1994; 2,548 in 1995; 2,448 in 1996; and, 2,348 in 1997. (e) Except as provided in subsection 28–19(d), no person shall own in whole or in part, directly or indirectly, or have a security interest in more than 25 percent of the authorized livery licenses or more than 25 percent of the authorized taxicab licenses. No person who owns in whole or in part, directly or indirectly, or has a security interest in more than 25 percent of the authorized livery licenses or more than 1,000 Chicago taxicab licenses shall be eligible to acquire additional license, including by transfer pursuant to Section 28–19(f); provided, however, if [Yellow Cab] choose[s] to relinquish licenses sooner than provided in subsection 28–19(d), [the Company] may acquire additional licenses pursuant to Section 28–19(f), but in no event may the number of licenses [Yellow Cab] hold[s] in any year exceed the number of licenses [the Company] may be entitled to renew pursuant to subsections 28–19(c) and (d) herein.

(Def.'s Mot. to Dismiss at 2–3.) The settlement agreement also provided, "[t]his ordinance shall constitute the entire agreement between the City and [Yellow Cab], and no warranties, inducements, considerations, promises or other references shall be implied or impressed upon this agreement that are not expressly addressed herein." (Def.'s Mot. to Dismiss at 4.)

Ten years later, on December 10, 1997, the City enacted the Substitute Ordinance at issue in this lawsuit. (Def.'s Mot. to Dismiss at 1.) The Substitute Ordinance eliminated certain provisions of the 1987 ordinance including section (d) above, which contained the provision permitting Yellow Cab to own 2,348 medallions in 1997. (Def.'s Mot. to Dismiss at 4.) In light of this amendment to the City's municipal code, the City has taken the position that the Substitute Ordinance requires Yellow Cab to reduce the number of medallions it owns to no more than 25% of the total authorized medallions by December 31, 1997, or surrender any medallions over 25% to the City, pursuant to section (e) above. (Compl.¶ 58.) In response to the City's interpretation of the 1987 agreement and Substitute Ordinance, Yellow Cab sold 647 medallions at a price substantially below market value to comply with the 25% limitation. (Compl.¶ 59.)

Yellow Cab then filed its three count complaint in this court. In count I, Yellow Cab claims the City breached the 1987 settlement agreement, which permitted Yellow Cab to retain up to 2,348 taxicab medallions as an exception to the 25% limitation, by enacting the Substitute Ordinance. (Compl.¶ 58.) In counts II and III, Yellow Cab claims the City impaired Yellow Cab's contractual right to retain up to 2,348 medallions by enacting the Substitute Ordinance. (Compl.¶¶ 63, 67.) Yellow Cab requests monetary damages and an injunction preventing the City from further reducing the number of medallions owned by Yellow Cab and allowing Yellow Cab to own up to 2,348 medallions. (Compl.¶¶ 60, 64, 68.)

### Analysis

Defendants move to dismiss Yellow Cab's complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F.Supp. 1399, 1406 (N.D.Ill.1996) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990)). Therefore, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1996) (citation omitted). The court will dismiss a claim only if "it appears beyond doubt

that [the plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." *Colfax,* 79 F.3d at 632 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

The City attacks Yellow Cab's complaint on several grounds. The City contends that count I fails to state a legally sufficient claim for breach of contract. The City also argues that counts II and III of Yellow Cab's complaint fail to state claims for impairment of contract under either the Federal or Illinois Constitutions. Because this court's jurisdiction depends on the viability of count II— Yellow Cab's impairment of contract claim arising under the U.S. Constitution—the court first addresses the City's argument that Yellow Cab fails to state a valid federal claim.

The Contract Clause of the U.S. Constitution provides that, "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. This language was intended to protect individuals from state interference in their private contracts, particularly against hostile actions by a state. Robert L. Hale, *The Supreme Court and the Contract Clause: III,* 57 Harv. L.Rev. 852, 891 (1943–44). However, there is no record of open debate about the scope of the specific terms of the Contract Clause at the constitutional convention; therefore, the Contract Clause is subject to various interpretations. Samuel R. Olken, *Charles Evans Hughes and the Blaisdell Decision: A Historical Study of Contract Clause Jurisprudence,* 72 Or. L.Rev. 513, 520 (1993).

■ A contracting party may invoke the protections of the Contract Clause when there is an exercise of legislative power. *Arriaga v. Members of·Bd. of Regents,* 825 F.Supp. 1, 4 (D.Mass.1992). By its terms, the Contract Clause applies only to state constitutions, constitutional amendments, statutes, ordinances or any instrumentality of state legislated or delegated authority. *Id.* (citing *Ross v. Oregon,* 227 U.S. 150, 163, 33 S.Ct. 220, 223, 57 L.Ed. 458 (1913)). However, courts generally recognize that the Contract Clause also applies to the actions of state subdivisions, including city councils.

*Horwitz–Matthews, Inc. v. City of Chicago,* 78 F.3d 1248, 1251 (7th Cir.1996). Where a city "acts through ordinances, then its contractual approvals and repudiations will be embodied in ordinances." *Id.,* at 1251. Consequently, a city ordinance may trigger the protections of the Contract Clause.

■ The protections of the Contract Clause, however, only apply to *impairments* of contract rights; the Contract Clause does not protect private parties from governmental *breaches* of contract. For example, a state's refusal to perform its obligations under a contract with a private party constitutes a breach of contract, but does not raise a constitutional issue. Hale, supra at 891. Whether a state's legislative action has "impaired" a private party's contractual rights presents a separate inquiry.

The Supreme Court has distinguished between an unconstitutional impairment of a contract obligation and a breach of contract for purposes of claims brought under the Contract Clause. *See Hays v. Port of Seattle,* 251 U.S. 233, 237, 40 S.Ct. 125, 126, 64 L.Ed. 243 (1920). The distinguishing characteristic between a constitutional impairment and a contractual breach is whether the non-breaching party has an available remedy. *Id.; Horwitz–Matthews,* 78 F.3d at 1250–51. If a state exercises legislative power in a way that eliminates the availability of a remedy or action for damages by the non-breaching party, the state has impaired the contract. In contrast, if some legislative action announces the state's refusal to perform its contractual obligation, the state has simply breached the contract. *See Horwitz–Matthews,* 78 F.3d at 1251. Thus, even if the state repudiates its contract by enacting a law that purports to repeal the state's obligation, the state remains obligated to pay the other party's damages under the law of contracts. *See Horwitz–Matthews,* 78 F.3d at 1251 ("unless the city council has been delegated authority by the state to modify the law of contracts ... there is no impairment of the obligation of the city's contracts"). This continuing contractual duty to pay damages therefore supplies the non-breaching party's "right to recover from the state for the damages sustained." *Hays,* 251 U.S. at 237.

In *Horwitz–Matthews*, the Seventh Circuit held that a state or local law unconstitutionally impairs a contract only when the law provides the state or one of its subdivisions with a complete defense to a breach of contract suit, thereby preventing the other party from obtaining damages for breach of contract. 78 F.3d at 1251–52; *see also E & E Hauling, Inc. v. Forest Preserve Dist. of Du Page County, Ill.,* 613 F.2d 675, 679 (7th Cir.1980). In other words, if the legislative action does not prevent a non-breaching party from seeking damages in a breach of contract action against a state or one of its subdivisions, there has been no unconstitutional impairment of a contract obligation. *Horwitz–Matthews,* 78 F.3d at 1251–52; *Union Pacific R.R. Co. v. Village of S. Barrington,* 958 F.Supp. 1285, 1297 (N.D.Ill.1997).

In *Horwitz–Matthews*, the City and a developer entered into an agreement in which the developer agreed to purchase a condemned parcel of real estate from the City and redevelop the land in accordance with the City's urban renewal plan. 78 F.3d at 1249. The agreement assumed the form of a city ordinance. *Id.* After years of delay, the City Council passed a second ordinance that repealed the first ordinance and declared that there was no contract for the sale and redevelopment of land between the City and the developer. *Id.* at 1250. The developer sued the City, alleging that the City's new ordinance impaired the developer's contract rights under the Contract Clause. *Id.* at 1249. The district court dismissed the developer's constitutional claim for failure to state a claim upon which relief could be granted. *Id.* The district court reasoned that the second ordinance did not prevent the developer from seeking damages as a remedy for the City's alleged breach of the agreement to sell the land. *Horwitz–Matthews, Inc. v. City of Chicago,* No. 94 C 5995, 1995 WL 76889, at *4 (N.D.Ill.1995).

On appeal, the Seventh Circuit affirmed the district court. *Horwitz–Matthews,* 78 F.3d at 1252. The Court of Appeals began its analysis with the simple premise that "a contract is an obligation to perform or pay damages for nonperformance." *Id.* at 1251. The court therefore reasoned that if a state fails to perform on its contract, but the legal obligation to pay damages for that breach remains, the contract has not been impaired. *Id.* The court further explained that a contract is impaired only when the legislation destroys *both* the obligation to perform on the contract *and* the obligation to pay damages for nonperformance. *Id.*

The court illustrated the difference between an impairment of a contract and a breach of a contract with the following hypothetical. If the State of Illinois passed a law forbidding the City to sell land for redevelopment, there would have been an impairment of contract because the City could have claimed the prohibition as a defense to a breach of contract suit. *Id.* The developer could have then sued the State for impairment of contract. *Id.* In *Horwitz–Matthews*, however, the ordinance repealing the 1988 ordinance simply announced the City's refusal to perform the agreement with the developer. *Id.* at 1251. The court emphasized that the new ordinance did not "prohibit the city from doing anything; any such ordinance could have been immediately repealed by another ordinance; all the ordinance did was announce the city's termination of the contract." *Id.* Because the City retained the authority to amend the second ordinance, no law prohibited the City from honoring its contractual duties to either perform its obligations or pay damages for breach of the agreement. *Id.* Since the City retained the authority to decide what course of action to take, the new ordinance did not impair the developer's contract rights. *Id. Horwitz–Matthews* therefore teaches that an impairment results only if a new law divests the contracting state entity of its authority to act on the contract. Only then can a state raise the legislative act as a complete defense to a suit for breach of contract.

In this case, to determine whether the City impaired Yellow Cab's contractual rights, the court must determine whether the City simply broke the promise it made to Yellow Cab when it enacted the Substitute Ordinance, or whether the City both broke its promise and created a complete defense to a breach of contract suit by Yellow Cab. *See Horwitz–Matthews,* 78 F.3d at 1251. Ac-

cepting the facts alleged by Yellow Cab as true, Yellow Cab's complaint does not establish a claim for an unconstitutional impairment of contract. Yellow Cab's complaint plainly asserts that the City broke its promise to allow Yellow Cab to retain up to 2,348 medallions as an exception to the 25% limitation. (Compl.¶ 42.) Specifically, Yellow Cab reads the 1987 agreement/ordinance as authorizing it to own up to 2,348 taxicab medallions both "in 1997" and for every year thereafter. However, Yellow Cab fails to allege that the Substitute Ordinance somehow eliminated the City's prior obligation under the 1987 contract. Although Yellow Cab claims that the City "outlawed" the 1987 agreement, in reality, the City did no such thing. Instead, the City simply announced (by way of the Substitute Ordinance) its interpretation of the 1987 agreement. On its face, the Substitute Ordinance does not even purport to extinguish the City's prior legal obligations under the 1987 agreement. Thus, Yellow Cab's complaint does not allege or even suggest that the Substitute Ordinance precludes a breach of contract action for damages in state court.

In other words, the Substitute Ordinance does not relieve the City of its contractual obligation to pay damages for its nonperformance. Thus, if Yellow Cab is correct that the original contract authorizes it to continue owning 2,348 medallions despite the new 25% limitation, Yellow Cab can obtain money damages for the City's breach of that contract. Additionally, if Yellow Cab's interpretation is correct, Yellow Cab may obtain a declaration of its contractual right to own 2,348 medallions. Nothing in the Substitute Ordinance prevents Yellow Cab from obtaining relief under Illinois contract law.

On the other hand, if the State of Illinois had passed a law prohibiting the City from selling, issuing, or authorizing taxicab licenses and medallions, the City could claim this prohibition as a complete defense to Yellow Cab's breach of contract claim. In this situation, the State would have impaired Yellow Cab's contract rights and Yellow Cab would have a viable claim of unconstitutional impairment of its contract against the state. However, Yellow Cab does not allege these facts. Because the Substitute Ordinance does not relieve the City of its contractual obligation to pay damages for a breach, Yellow Cab fails to state a claim under the Contract Clause of the U.S. Constitution.

Yellow Cab attempts to escape this result by arguing that its request for an injunction requires a declaration that the relevant provisions of the Substitute Ordinance are an unconstitutional impairment of a contractual obligation. (Pla.'s Resp. at 6.) Yellow Cab bases this argument on the premise that it can only obtain injunctive relief if a court declares the Substitute Ordinance unconstitutional. Otherwise, Yellow Cab argues, the City could use the Substitute Ordinance as a complete defense to Yellow Cab's request for injunctive relief.

The court disagrees with this argument. As the court has explained, the City has the authority to amend the ordinance. Upon hearing this case, if the state court finds in favor of Yellow Cab, the court might very well order the City to pay damages. Additionally, if Yellow Cab's interpretation is correct, the state court could also declare that the 1987 agreement gives Yellow Cab the contractual right to own up to 2,348 taxicab medallions. Therefore, "unless the city council has been delegated authority by the state to modify the law of contracts," *Horwitz–Matthews*, 78 F.3d at 1251, no City ordinance can take that right away from Yellow Cab. In other words, regardless of what the Substitute Ordinance says, Yellow Cab has a contractual right that may be enforced. Finally, if Yellow Cab prevails and remains dissatisfied with a court declaration of its rights under the 1987 agreement, Yellow Cab could certainly ask the state court for an injunction enforcing its rights. *See, e.g., Petrzilka v. Gorscak*, 199 Ill.App.3d 120, 145 Ill.Dec. 363, 556 N.E.2d 1265, 1268 (1990) (party may obtain injunctive relief to enforce terms of contract under Illinois law). As alleged, the facts demonstrate that the City unilaterally implemented its interpretation of the 1987 agreement by amending the Substitute Ordinance in 1997. However, the complaint fails to allege that the City cannot again amend the ordinance and thereby comply with its contractual obligations as declared by the

state court. The Substitute Ordinance simply changed the terms of medallion ownership; it did not affect the City's authority to sell, issue, or authorize taxicab licenses and medallions.

Moreover, in *Mullen v. Administrative Office of the Ill. Courts,* the court dismissed an impairment of contract claim where plaintiff-employees sought an injunction rather than monetary damages. No. 92 C 5611, 1993 WL 478943, at *4 (N.D.Ill.1993). In that case, plaintiff-employees alleged impairment of contract against their employer, the State of Illinois, when the State amended a leave of absence policy, which limited the plaintiff-employees' sick leave allowance. *Id.* The request for an injunction rather than monetary damages had no impact on the court's finding that plaintiffs failed to state an impairment of contract claim under the Contract Clause. *Id.* Rather, like this court, the *Mullen* court found that injunctive relief is readily available in state court and therefore dismissed the federal claim. *Id.*

In short, Yellow Cab's lawsuit is essentially a breach of contract action and Yellow Cab has a remedy for breach of contract under state law; therefore, Yellow Cab has not stated a claim for violation of the Contracts Clause of the U.S. Constitution. Because the court dismisses the federal claim in count II, this court declines to exercise supplemental jurisdiction over Yellow Cab's state law claims in counts I and III.[2] *See* 28 U.S.C. § 1367(c)(3). Because the federal claim over which this court exercises original jurisdiction has been dismissed, the court should refrain from hearing the supplemental state law claims. *Van Harken v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir.1997). The court expresses no opinion on the merits of Yellow Cab's remaining claims and therefore remands these claims to state court.

### Conclusion

For the foregoing reasons, the court grants defendants' motion to dismiss count II and therefore dismisses this suit for lack of subject matter jurisdiction. The court expresses no opinion as to the viability of counts I and III. The court remands this case to Illinois State court to address Yellow Cab's state law claims.

---

**2.** In its response to Yellow Cab's Motion to Dismiss, the City voluntarily dismissed the claims against the Commissioner, a named defendant in this complaint. (Pla.'s Resp. at 14.)